**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARCO NATIONAL INSURANCE COMPANY, | |
| Plaintiff, | Case No. 1:25-cv-05949 (LJL) |
| v. | [Related to 1:24-cv-10049 (LJL)] |
| WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, IT ENDS WITH US MOVIE LLC, A California Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, and STEVE SAROWITZ, an individual, | |
| Defendants. | |

**PLAINTIFF HARCO NATIONAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY**

SKARZYNSKI MARICK & BLACK LLP

Evan Shapiro
James T. Sandnes
One Battery Park Plaza, 32nd Floor
New York, NY 10004
Tel:  (212) 820-7700
eshapiro@skarzynski.com
jsandnes@skarzynski.com

*Attorneys for Plaintiff Harco National Insurance Company*

i

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF THE CASE ................................................................................... 3

ARGUMENT ............................................................................................................. 8

    A.    Application of the Brillhart/Wilton Doctrine Is Improper Where There is
           No Parallel Action Between the Same Parties ........................................................ 9

    B.    The Court Should Neither Stay Nor Dismiss the Action Because the
           Brillhart/Wilton Factors Weigh Against Abstention ............................................. 12

           1.    The Scope Of The Pending State Proceeding And The Nature Of
                 The Defenses Available There Weigh Heavily Against Abstention .......... 13

           2.    Whether The Claims Of All Parties In Interest Can Satisfactorily
                 Be Adjudicated In The State Court Proceeding ......................................... 13

           3.    All Necessary Parties to Harco's Action Have Been Joined And
                 Harco is Not a Necessary Party to the California Lawsuit ....................... 14

           4.    That Harco is Amenable To Process In California is of No Weight ......... 14

           5.    Avoiding Duplicative or Piecemeal Litigation .......................................... 14

           6.    Harco Did Not Engage in Improper Forum Shopping.............................. 16

           7.    The Relative Convenience of the Fora Weighs In Favor Of
                 Proceeding in This Court ........................................................................... 18

           8.    The Order Of Filing Favors This Court Exercising Jurisdiction .............. 19

           9.    Choice Of Law Considerations Do Not Support Abstention .................... 20

CONCLUSION ......................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*A & E Television Networks v. Genuine Ent., Inc.,*
   2010 WL 2308092 (S.D.N.Y. June 10, 2010) ..................................................... 9, 17

*AdmiralAm. Ins. Co. v. Graftech Int'l Ltd.,*
   2014 WL 2884681 (S.D.N.Y. Jun 24, 2014) ........................................................... 9

*Admiral Ins. Co. v. Niagara Transformer Corp.,*
   57 F.4th 85 (2d Cir. 2023) ................................................................................. 10, 12

*Armstrong World Indus. Inc. v. Aetna Cas. & Sur. Co.,*
   45 Cal. App. 4th 1, (1996) ......................................................................................... 6

*Brillhart v. Excess Insurance Co. of America,*
   316 U.S. 491 (1942) ................................................................................................ 8, 9

*Centennial Ins. Co. v. United States Fire Ins. Co.,*
   88 Cal. App. 4th 105 (2001) ....................................................................................... 6

*Colorado River Water Conservation Dist. v. United States,*
   424 U.S. 800 (1976) ................................................................................................... 15

*Cont'l Cas. Co. v. Phoenix Life Ins. Co.,*
   2020 WL 4586699 (D. Conn. Aug. 10, 2020) ......................................................... 21

*Dow Jones & Co., Inc. v. Harrods Ltd.,*
   346 F.3d 357 (2d Cir. 2003) ..................................................................................... 10

*Dunkin' Donuts Franchised Restaurants LLC v. Rijay, Inc.,*
   2007 WL 1459289 (S.D.N.Y. May 16, 2007). ..................................................... 14-15

*Employers Ins. of Wausau v. Fox Entertainment Group, Inc.,*
   522 F.3d 271 (2d Cir. 2008) ..................................................................................... 20

*Gen. Reins. Corp. v. Ciba-Geigy Corp.,*
   853 F.2d 78 (2d Cir. 1988) ....................................................................... 10, 13, 19, 20

*Glenclova Inv. Co. v. Trans-Res., Inc.,*
   874 F. Supp. 2d 292 (S.D.N.Y. 2012) ....................................................................... 9

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.,*
   735 F. Supp. 581 (S.D.N.Y. 1990) ........................................................................... 17

*Harleysville Ins. Co. v. Certified Testing Lab'ys Inc.,*
   681 F. Supp. 3d 155 (S.D.N.Y. 2023) ......................................................... 10, 17, 21

*Hartford Accident & Indem. Co. v. Hop-On Int'l Corp.*,
    568 F. Supp. 1569 (S.D.N.Y. 1983) ................................................................. 10, 19

*ICBC Standard Secs., Inc. v. Luzuriaga*,
    217 F. Supp. 3d 733 (S.D.N.Y. 2016) ..................................................................... 9

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*,
    24 N.Y.2d 372 (1969) ........................................................................................... 20

*LaFleur v. Whitman*,
    300 F.3d 256 (2d Cir. 2002). ................................................................................... 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................. 15

*N. Am. Airlines, Inc. v. Int'l Brotherhood of Teamsters*,
    2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ................................................... 10, 17

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Warrantech Corp.*,
    2001 WL 194903 (S.D.N.Y. Feb. 27, 2001) ........................................................... 9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp., Inc.*,
    2003 WL 21277114 (S.D.N.Y. June 2, 2003) .................................................... 16-17

*Nat'l Union Fire Ins. Co. v. Karp*,
    108 F.3d 17 (2d Cir. 1997) ...................................................................................... 9

*New York Life Ins. Co. v. United States*,
    724 F.3d 256 (2d Cir. 2013). .................................................................................... 3

*Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*,
    263 F. Supp. 3d 471 (S.D.N.Y. 2017) ................................................................... 21

*Reliance Ins. v. Multi-Fin. Sec. Corp.*,
    1996 WL 61763 (S.D.N.Y. Feb. 13, 1996) ........................................................... 10

*Ryan v. Volpone Stamp Co.*,
    107 F.Supp.2d 369 (S.D.N.Y. 2000) ..................................................................... 19

*St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*,
    87 F. Supp. 3d 603 (S.D.N.Y. 2015) ..................................................................... 21

*Starr Indem. & Liab. Co. v. Exist, Inc.*,
    2024 WL 503729 (2d Cir. Feb. 9, 2024) ............................................................... 12

*State of California v. Cont'l Ins. Co.*,
    15 Cal. App. 5th 1017 (2017) .................................................................................. 6

*TIG v. Fairchild Corp.*,
    2008 WL 2198087 (S.D.N.Y. May 27, 2008) ...................................................................... 9, 13

*Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*,
    2004 WL 193564 (S.D.N.Y. Feb. 3, 2004) ................................................................. 9, 12, 13

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ................................................................................................................. 9

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
    933 F.2d 131 (2d Cir. 1991). .................................................................................................. 20

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*,
    239 F.3d 517 (2d Cir. 2001) ................................................................................................... 15

*Youell v. Exxon Corp.*,
    74 F.3d 373 (2d Cir. 1996) ....................................................................................................... 9

**<u>Statutes</u>**

28 U.S.C. §§ 2201 ........................................................................................................................... 5

28 U.S.C. §§ 2202 ........................................................................................................................... 5

**<u>Rules</u>**

Fed. R. Civ. P. Rule 19 ................................................................................................................. 14

Fed. R. Civ. P. Rule 57 ................................................................................................................... 5

Plaintiff Harco National Insurance Company ("Harco") respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss or Stay This Action (the "Motion") filed by defendants Wayfarer Studios, LLC ("Wayfarer"), It Ends With Us Movie, LLC ("IEWUM"), Justin Baldoni, Jamey Heath, and Steve Sarowitz (collectively, the "Wayfarer Parties").

## PRELIMINARY STATEMENT

Harco filed this insurance coverage action in good faith to obtain a timely and definitive judicial determination of its coverage obligations arising from an underlying lawsuit (the "*Lively Lawsuit*"[1]), a case already pending before this Court and moving forward quickly pursuant to this Court's scheduling orders. Such early insurance coverage determinations allow insurers, insureds, and all of the parties to an underlying litigation to align their conduct, as well as their litigation and settlement posture given the defined contractual economic obligations. Disputes such as this are quintessential cases for U.S. district courts to issue declaratory judgments.

The Wayfarer Parties' Motion rests on a fundamental misapplication of the *Brillhart/Wilton* abstention doctrine. It also overlooks key procedural and factual differences between this and the later-filed California coverage action involving different insurers and different insurance policies (the "California Lawsuit"). Harco respectfully submits that proper application of the *Brillhart/Wilton* factors to the facts and posture of this case does not support dismissal or a stay.

Unlike the cases cited in the Motion, there is no pending parallel proceeding involving Harco, the insurance policies Harco issued to Wayfarer, or the facts relevant to Harco's coverage position with respect to the *Lively* Lawsuit. Rather, the California Lawsuit concerns *different* insurers, *different* insurance policies, with *different* terms and *different* coverage issues such that it

---

[1] *Lively v. Wayfarer Studios LLC, et al.,* S.D.N.Y. Case No. 1:24-cv-10049 (LJL).

cannot afford complete relief between Harco and the Wayfarer Parties. Further, abstention by this Court in this action would not promote efficiency; it would instead multiply proceedings, delay resolution of this dispute, and create the very inefficiency that the Declaratory Judgment Act seeks to avoid.

As detailed below, the relevant *Brillhart/Wilton* factors either weigh against abstention or are neutral. The Wayfarer Parties focus on just three factors—i.e., whether California provides a more convenient or proper forum, whether Harco engaged in improper forum shopping, and whether abstention is warranted because this action involves California insurance law—are neither controlling nor compelling. Rather, two of those factors (convenience and forum shopping), actually favor this Court retaining this case, as do all the other factors their brief does not even address.

This Court, which is already overseeing the *Lively* Lawsuit, is the best equipped forum to ensure consistent adjudication of the coverage questions in this action tied to pleadings and evidence in that ongoing case. This Court has already recognized this by accepting this action as related to the *Lively* Lawsuit and in its ruling denying the Wayfarer Parties' motion to quash Ms. Lively's subpoena for Harco's insurance documents. *See* Exh. A.[2] Moreover, Harco is statutorily entitled to a federal court forum, whether here or in California.  As to choice of law and forum shopping, this Court regularly applies California and other state's laws to disputes before it when appropriate, and Harco filed this action only after denying coverage and waiting more than thirty days with no indication that litigation was imminent. In short, this Court should put no weight on the Wayfarer Parties' suggestion that the court where the underlying case is pending is somehow more convenient, much less appropriate.

---

[2] All documents cited herein are attached to the accompanying Declaration of Evan Shapiro ("Shapiro Decl.) and cited as "Exh. _."

At bottom, under the Declaratory Judgment Act, this Court routinely decides insurance disputes like this one between diverse parties and, in this case the principles of efficiency and fairness all favor retention of jurisdiction.

## STATEMENT OF THE CASE

### A.  The Lively Lawsuit is Commenced and the Wayfarer Parties Begin to Defend

As the Wayfarer Parties' Motion acknowledges, this Court is very familiar with the *Lively* Lawsuit, which was filed in this Court on December 31, 2024, and served on the Wayfarer Parties within the first 10 days of January 2025. Counsel for these Wayfarer Parties filed appearances shortly thereafter (on January 22, 2025) and on January 24, 2025, Wayfarer and IEWUM filed Answers to the Complaint. Ms. Lively filed an Amended Complaint on February 18, 2025 and the Wayfarer Parties filed their Answers to the Amended Complaint on March 20, 2025. This Court has set the *Lively* Lawsuit for trial to commence on March 9, 2026.  *See* Exh. B at Dkt. Nos. 1, 7-8, 10-11, 13, 35-36, 58, 84, 147-151, 425; Exh. C ¶¶ 3, 7, 18, 34-35, 40-43.[3]

### B.  The Harco Policies

As detailed in Harco's Complaint in this action (Exh. C), Harco issued two separate Management Liability Policies to Wayfarer as the **Named Insured**:[4] one effective from July 15, 2023 to July 15, 2024 (the "2023 Policy") and one effective from July 15, 2024 to July 15, 2025 (the "2024 Policy") (the 2023 Policy and 2024 Policy are jointly the "Policies"). Each Policy was issued in reliance on Applications in which the Wayfarer Parties made certain representations and warranties. Subject to all of their terms, conditions, limitations, and exclusions, each of the Policies

---

[3]  In addition to the Complaint, which contains factual allegations which must be assumed to be true for purposes of this motion, this Court may also consider documents "incorporated in the complaint by reference, as well as documents upon which the complaint relies and are integral to the complaint." *New York Life Ins. Co. v. United States*, 724 F.3d 256, 258 n.1, 261 (2d Cir. 2013).

[4]  The Harco Policies use boldface type for terms which are defined in the Policies.

provide insurance coverage including Directors and Officers Liability ("D&O") and Employment Practices Liability ("EPL"). Each of these coverages are triggered by **Claims** first made against Insureds and reported to Harco pursuant to the terms of the Policies, unless coverage is precluded by any exclusion(s) of the Policy.[5] *See* Exh. C ¶¶ 1, 46-60.

### C. Nearly Four Months After Receiving Service of the Lively Lawsuit, the Wayfarer Parties Submit Notice to Harco and Request a Defense by Harco

On April 25, 2025, (a) nearly four months after the Wayfarer Parties received service of the *Lively* Lawsuit and hired counsel to represent them, (b) three months after Wayfarer and IEWUM answered the Complaint, (c) more than two months after Ms. Lively filed an Amended Complaint, and (d) over one month after the Wayfarer Parties filed Answers to the Amended Complaint, the Wayfarer Parties first provided notice to Harco of the Amended Complaint in the *Lively* Lawsuit as a "new loss" and asked Harco to provide them with a defense in that action. *See* Exh. B at Dkt 7-8, 10-11, 13, 35-36, 84, 147-151; Exh. C ¶¶ 3, 7, 18, 34-35, 40-43.

By letter dated June 20, 2025, Harco disclaimed coverage for the *Lively* Lawsuit. *See* Exh. C ¶¶ 7, 41-42. Later that same day, by email, a New York-based attorney responded, stating that the Wayfarer Parties disagreed with Harco's position and would be providing a substantive response "shortly" explaining why they believed Harco's position was incorrect and to ask that the denial be withdrawn. *See Id*. at ¶¶ 43 and Exh. D.

A month then passed, without arrival of the promised substantive explanation (or any further communication) from the Wayfarer Parties' counsel as to why the putative insureds believe Harco's denial was incorrect. Meanwhile, the *Lively* Lawsuit was proceeding apace, with deadlines set for all parties' document production to be completed by July 25, 2025, and all depositions and

---

[5] As also detailed in Harco's Complaint in this action (Exh. C), coverage under each of the Policy is subject to, among other things, exclusions applicable to matters known to the Insureds prior to their submission of the respective applications for the Policies (the "PKE Exclusions"). *Id.* ¶¶ 4-6, 54, 59-60.

fact discovery to be completed by September 30, 2025, and trial set for March 9, 2026. *See* Exh. B at Dkt. Nos. 45, 58, 425; Exh. C ¶ 44.

Of course, if, as Harco maintains, its Policies do not provide coverage for the defense or resolution of the *Lively* Lawsuit, then the progress of that litigation does not matter to Harco. But if, as the coverage counsel for the Wayfarer Parties asserted in the email on June 20, 2025, coverage is potentially available, then Harco's is prejudiced by the lack of the promised information, including the loss of any potential opportunities to limit its exposure.

Faced with this uncertainty and lack of further communication, on July 21, 2025, Harco filed its Complaint in this action for a declaratory judgment pursuant to Fed. R. Civ. P. Rule 57 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (the "DJA"). *See* Exh. C. Harco also filed a Statement of Relatedness to the *Lively* Lawsuit, noting that the Wayfarer Parties are also defendants in the *Lively* Lawsuit and the facts alleged and admitted in the *Lively* Lawsuit are directly relevant to Harco's coverage defenses. *See* Exh. E. Per the Court's docket for this case, on July 23, 2025, this Court accepted Harco's action as related to the *Lively* Lawsuit. *See* Exh. F (July 23, 2025 entry).

Just one day after this action was instituted, the Wayfarer Parties sent to Harco their long-promised letter responding to Harco's denial. *See* Exh. G. In a footnote, this letter acknowledges that the Wayfarer Parties were aware of the filing of this action. *Id*. at 1, n.1. In addition, the letter makes two points which undercut the Wayfarer Parties' position in the present motion: (1) it recognizes that New York and California courts apply the same standard for evaluating an insurers' duty to defend;[6] and (2) it asserts that Harco's "Other Insurance" defense is irrelevant because

---

[6] In support of this argument, the letter cites cases both New York and California cases.

"[a]s a general rule, insurance policies should be interpreted as if no other insurance is available." *Id.* at 10.[7]

On July 30, 2025, the Wayfarer Parties' counsel rejected Harco's counsel's request that they accept service of this action despite having identified themselves as the Wayfarer Parties' coverage counsel in response to Harco's June 20, 2025 coverage denial letter. Shapiro Decl. ¶ 12. Harco then initiated service on the Wayfarer Parties, copying their counsel as a courtesy.

### D. Wayfarer's California Lawsuit

Also on July 30, 2025, the same day that Harco asked the Wayfarer Parties to accept service of this action, but unbeknownst to Harco, the Wayfarer Parties filed a separate coverage action in California Superior Court for the County of Los Angeles (the "California Lawsuit"), against three insurers, not including Harco. *See generally,* Exh. H.[8] The Complaint in the California Lawsuit alleges that each of the insurer defendants (the "Other Insurers") issued insurance policies providing coverage to either Wayfarer or IEWUM which required them to defend the *Lively* Lawsuit, and that each denied coverage based on the particular terms, conditions and exclusions of their respective policies. *Id.* ¶¶ 1, 23-30, 34-48, 51-60. This Complaint also asserts separate causes of action against each of the Other Insurers disputing the basis for each of the Other insurers' separate denials of coverage based on the specific terms of their respective insurance policies, each

---

[7] In support of these arguments, the letter cites the following cases with the following parentheticals: *Armstrong World Indus. Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 78 n.13 (1996) (each insurer has a separate and independent duty to respond "in full" to a claim); *State of California v. Cont'l Ins. Co.*, 15 Cal. App. 5th 1017, 1032 (2017) ("other-insurance clauses are intended to apply in contribution actions between insurers, not in coverage litigation between insurer and insured"); *Centennial Ins. Co. v. United States Fire Ins. Co.*, 88 Cal. App. 4th 105, 115 (2001) ("insurers must respond in full to a contractual policyholder's tender"; right to seek contribution from other insurers is "entirely separate from their obligations to their insured"). Exh. G at 10.

[8] This Court may take judicial notice of documents filed in another court "to establish the fact of such litigation and related filings." *LaFleur v. Whitman,* 300 F.3d 256, 267 n.1 (2d Cir. 2002).

of which are materially different than Harco's bases for its denial of coverage under the terms of its Policies. *Id.* ¶¶ 64-120.

The California Lawsuit, filed after Harco properly commenced this action in this Court, appears to have been an effort by the Wayfarer parties to forum shop out of this Court. Indeed, the Wayfarer Parties took steps to delay this action in favor of their California Lawsuit. As noted above, on July 30, 2025, the same day that the Wayfarer Parties filed the California Lawsuit, they declined to accept service of Harco's Action. Shapiro Decl. ¶ 12. Then, approximately 20 days later, after filing and serving the California Lawsuit (*id.*), the Wayfarer Parties changed their position and agreed to accept service of this action on the condition that service be deemed effective on August 25, 2025. This condition effectively extended the Wayfarer Defendants' time to respond to Harco's Complaint until October 24, 2025, allowing the California Lawsuit to advance slightly ahead of this action. *See* Exh. I.

Although the Wayfarer Parties' California Lawsuit is the basis for the present Motion, that Complaint is not in any way parallel to this action. Rather, Harco is not a party to that action and the Other Insurers' denied coverage for the *Lively* Lawsuit based on their respective policies' distinct coverage terms, giving rise to distinct contractual and factual issues. Specifically, one of the Other Insurers named in the California Lawsuit, New York Marine and General Insurance Co. ("NYM"), is alleged to have issued three separate Commercial General Liability ("CGL") insurance policies to IEWUM providing occurrence-based coverage during policy periods effective from, respectively, February 21, 2023 to May 30, 2024; May 30, 2024 to August 31, 2024; and August 31, 2024 to August 31, 2025. These policies allegedly provide coverage for "bodily injury and property damage" and for "Personal & Advertising Injury" as defined therein. *See* Exh. H  at ¶¶ 23-27. These policies thus cover different risks than those covered by Harco's

claims made and reported D&O and EPL coverages, and apply based on different triggers (occurrence vs. claims made) during different time periods.

Another of the Other Insurers named in the California Lawsuit, QBE Insurance Corporation ("QBE"), allegedly issued a single policy to IEWUM as the "Named Insured," with Wayfarer as an "Additional Insured," apparently only for specified types of claims. Unlike the Harco Policies, the QBE policy appears to provide coverage for certain types of claims made during a three year "Policy Period" from May 9, 2023 to May 9, 2026. Also unlike the Harco Policies, this policy allegedly applies to claims arising out of specifically defined "Media Activities." *Id.* at ¶¶ 34-44.

The Other Insurer named as defendant(s), Certain Underwriters at Lloyd's, London ("Underwriters"), allegedly issued a single policy to Wayfarer providing coverage for a policy period from December 6, 2024 to December 6, 2025. Again, unlike the Harco Policies, Underwriters' policy allegedly provides coverage for "Multimedia Liability and Advertising Injury" as well as "Professional Liability" and "Breach of Contract" (as each of those terms are defined in Underwriters' policy) and is apparently limited to claims arising from the "*Man Enough* podcast or its related content." *Id.* ¶¶ 51-60.[9]

In short, the California Lawsuit is addressed to coverage determinations by Other Insurers based on policy terms wholly distinct from the terms of the Harco Policies and therefore will not resolve the coverage dispute in this action.

## **ARGUMENT**

The Wayfarer Parties' Motion asks this Court to abstain from hearing Harco's properly filed action based on the *Brillhart/Wilton* abstention doctrine, which is derived from the Supreme Court's decisions in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and *Wilton*

---

[9] As this Court is aware, it appears from the allegations of the Complaints in the *Lively* Lawsuit, that Ms. Lively was not involved in the *Man Enough* podcast but that podcast is referenced in that Complaint.

*v. Seven Falls Co.*, 515 U.S. 277 (1995). As noted by the Second Circuit, this standard applies

when a parallel proceeding is pending involving the very same parties and it otherwise vests the

District Court with broad discretion to determine "whether and when to entertain an action." *Youell*

*v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996), *cert. denied*, 517 U.S. 1251 (1996).

　　In this case, proper analysis of the factors under *Brillhart/Wilton* and its progeny weigh

heavily against abstention by this Court.

**A.    Application of the Brillhart/Wilton Doctrine Is Improper Where There is
　　　No Parallel Action Between the Same Parties**

　　The *Brillhart/Wilton* doctrine does not apply here because it is triggered *only* when there

are duplicative and parallel actions pending *between the same parties*. *See, e.g., Brillhart*, 316 U.S.

at 495; *Wilton*, 515 U.S. at 279-90. As the Second Circuit has also explained: "[f]ederal and state

proceedings are 'concurrent' or 'parallel' for abstention purposes when the two proceedings are

essentially the same; that is, *there is an identity of parties*, and the issues and relief sought are the

same." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

　　Indeed, the vast majority of the abstention rulings cited in the Motion involve a pending

parallel action between the same parties. These cases include: *ICBC Standard Secs., Inc. v.*

*Luzuriaga,* 217 F. Supp. 3d 733, 739 (S.D.N.Y. 2016); *Ace Am. Ins. Co. v. Graftech Int'l Ltd.,* 2014

WL 2884681 (S.D.N.Y. Jun 24, 2014); *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292,

306-07 (S.D.N.Y. 2012); *A & E Television Networks v. Genuine Ent., Inc.,* 2010 WL 2308092, at

*2 (S.D.N.Y. June 10, 2010); *TIG v. Fairchild Corp.*, 2008 WL 2198087, at *5 (S.D.N.Y. May 27,

2008); *Travelers Indem. Co. v. Philips Elecs. N. Am. Corp*., 2004 WL 193564, at *3 (S.D.N.Y. Feb.

3, 2004); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Warrantech Corp*., 2001 WL 194903, at

*3 (S.D.N.Y. Feb. 27, 2001); *Reliance Ins. v. Multi-Fin. Sec. Corp.*, 1996 WL 61763, at *3

9

(S.D.N.Y. Feb. 13, 1996); *Gen. Reins. Corp. v. Ciba-Geigy Corp.,* 853 F.2d 78, 81 (2d Cir. 1988);

*Hartford Accident & Indem. Co. v. Hop-On Int'l Corp.*, 568 F. Supp. 1569, 1571 (S.D.N.Y. 1983).[10]

Here, in contrast, there is no pending parallel litigation between Harco and the Wayfarer

Parties. Rather, this foundational requirement is glossed over by the Wayfarer Parties' attempt to

characterize the California Lawsuit as raising "similar questions" as raised by this action and their

suggestion that Harco "could have been" named in that action. Such hypotheticals do not render

two proceedings parallel. The Wayfarer Parties' contention that they will seek to add Harco to the

California Lawsuit if this case is dismissed, does not alter the analysis of whether the two

proceedings are *currently* parallel.

Although Harco has not seen the Other Insurers' policies or coverage positions, material

differences are plain on the face of the Complaint in the California Lawsuit. *See generally,* Exh.

H. For example, as detailed in Harco's Complaint, the Harco Policies provide coverage for certain

types of D&O and EPL Claims, subject to the terms, conditions, limitations, exclusions, and the

representations and warranties provided in the Applications for the Harco Policies. *See* Exh. C at

¶¶ 46-60. In contrast, as reflected in the allegations of the California Lawsuit Complaint, and as

---

[10] The Motion also cites cases where declaratory judgment actions were dismissed because the issues raised were not ripe for resolution. *E.g., Admiral Ins. Co. v. Niagara Transformer Corp.,* 57 F.4th 85, 99 (2d Cir. 2023) (affirming dismissal of an insurer's declaratory judgment action due to the lack of a justiciable case or controversy where the action sought a declaration of coverage for a *potential* claim that had not yet been commenced or explicitly threated against its insured); *N. Am. Airlines, Inc. v. Int'l Brotherhood of Teamsters*, 2005 WL 646350, at *19 (S.D.N.Y. Mar. 21, 2005) (dismissing declaratory judgment action filed while labor negotiations were ongoing); *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003) (affirming dismissal of a declaratory judgment action on grounds that where action was non-justiciable and not ripe). Those cases are inapposite. Here, Harco has already denied coverage, and the Wayfarer Parties have disputed Harco's position. *See, e.g., Harleysville Ins. Co. v. Certified Testing Lab'ys Inc.,* 681 F. Supp. 3d 155, 165-66 (S.D.N.Y. 2023) (exercising jurisdiction over insurer's declaratory judgment action where insurer has denied coverage and, even though the complaint does not expressly allege that the insured disputed this position, the insurer's position is "indisputably adverse" to the insured).

detailed above, the Other Insurers' policies include materially different terms and coverage triggers including:

- NYM allegedly issued CGL policies which provide coverage for damages because of "bodily injury," "property damage" or "personal and advertising injury" caused by an "occurrence" as those terms are defined, and which occurs during the effective periods of those policies. *See, e.g.,* Exh. H ¶¶ 23-27.

- QBE allegedly issued a policy which provides coverage for "Loss on account of a Claim based upon … Scheduled Media" and "Media Activities that occur during the Policy Period." *See, e.g., id.,* ¶¶ 34-36 and 41-43.

- Underwriters allegedly issued a policy which provides coverage for "Multimedia Liability and Advertising Injury" as well as "Professional Liability" and breach of contract. This Policy apparently provides coverage for the insured's **business activities,** which are defined to mean the "Man Enough" podcast and its related content. See, e.g., *id.* ¶¶ 48-55.

Whether coverage exists under those very different policies, with very different terms, raises very different contractual issues than those presented in this Action. Further, wholly different factual and contractual issues are also raised as to whether Harco and the Other Insurers breached their respective duties to investigate coverage for their insureds, or to defend or indemnify them in the *Lively* Lawsuit, which are based on each policy's respective terms, conditions, limitations and exclusions.

In addition, as the California Lawsuit does not include Harco as a defendant and does not address the basis for the coverage dispute under the Harco Policies, any ruling in that action will neither resolve Harco's distinct contractual obligations under the terms of the very different Harco Policies nor will it resolve the facts relevant to Harco's coverage denial such as the nature of the information *provided to Harco* by Wayfarer in the Warranty and Applications for the Harco Policies. Thus, unlike in *Brillhart/Wilton*, and their progeny, there is no potential for "interference" by this federal court on the issues presented by the California Lawsuit.

For these reasons, and because abstention under *Brillhart/Wilton* is appropriate only when a truly parallel proceeding is pending between the same parties involving the same issues, the doctrine has no application here and the Motion should be denied for this reason alone.

**B.      The Court Should Neither Stay Nor Dismiss the Action Because the Brillhart/Wilton Factors Weigh Against Abstention**

Although, as discussed above, this action and the California Lawsuit are not parallel proceedings, should the Court find it appropriate to consider additional *Brillhart/Wilton* factors, abstention is not warranted because the relevant factors weigh against it.

The Motion states that factors to be considered when evaluating whether an action should be dismissed or stayed under *Brillhart/Wilton*, include:

> (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether all necessary parties have been joined; (4) whether such parties are amenable to process in that proceeding; (5) avoiding duplicative proceedings; (6) avoiding forum shopping; (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law.

Wayfarer Parties' Brief at 6 (quoting *Travelers Indem.,* 2004 WL 193564, at *2).[11]

As the Motion (and the case law) recognizes, the determination of whether to dismiss or stay a federal court action in favor of a state court action is within the sound discretion of the district court and that the relevant factors need not all be weighed equally, as their relevance varies with the circumstances. *See, e.g., Starr Indem. & Liab. Co. v. Exist, Inc.*, 2024 WL 503729 at *1 (2d Cir. Feb. 9, 2024) (finding district court did not abuse its discretion by not considering each and every factor). Here, the relevant factors weigh decisively against abstention.

---

[11] More recent Second Circuit decisions articulate these factors in a slightly different way. *See, e.g., Admiral*, 57 F.4th at 99-100. Nonetheless, the factors are essentially the same, so this Brief addresses the factors as presented by the Motion.

**1.      The Scope Of The Pending State Proceeding And The Nature Of The Defenses Available There Weigh Heavily Against Abstention**

As discussed above, this action and the California Lawsuit involve different parties, different insurance policies covering different risks and different defenses tied to those different policies. This factor thus weighs heavily in favor of this Court retaining jurisdiction of this case.

**2.      Whether The Claims Of All Parties In Interest Can Satisfactorily Be Adjudicated In The State Court Proceeding**

As currently constituted, the answer to this factor is a firm "no." Important here is the fact that the Wayfarer Parties, as plaintiffs in the California Lawsuit, did not name Harco as a defendant and they do not argue here that Harco is a necessary, or indispensable party for a full adjudication of the issues in the California Litigation. While it may be possible for the Wayfarer Parties to file new belated claims adding Harco to the California Lawsuit, any such potential future claims would be based on the Harco Policies and Harco conduct, *not* the Other Insurers' Policies or conduct currently at issue in the California Lawsuit. Harco's coverage dispute is therefore *not* "within the scope of the pending action," contrary to the Wayfarer Parties' assertion, and *will not* be adjudicated in that proceeding. Further, the California Lawsuit has already moved ahead of this action with Answers and Defenses filed by the Other Insurers. *See* Exh. I.

Conversely, the claims, rights and defenses of the parties in the California Lawsuit can effectively be adjudicated in that action without Harco, just as the issues presented here can be fully and fairly adjudicated without the participation of the Other Insurers.[12] Indeed, as quoted

---

[12] This factor distinguishes cases cited in the Motion on this point as those cases involved *parallel* actions not only between the same parties but proceedings which included primary and follow-form excess insurers or occurrences across multiple occurrence-based policies, such that issues to be decided were in fact duplicative. *See, e.g., Gen. Reins.*, 853 F.2d at 79-80 (abstention granted with respect to federal action by two excess insurers where state court action included all primary and excess carriers); *TIG Ins.*, 2008 WL 2198087, at *1, *3 (federal and state court actions involved the same parties and such that federal action was merely a subset of the state court action); *Travelers Indem., 2004 WL 193564, at *2* (federal and state court action pending between the very same parties presented an overwhelming commonalty of issues).

above, Wayfarer's counsel's July 22, 2025, letter to Harco's counsel argues that the possibility of insurance coverage from the Other Insurers is generally irrelevant to whether coverage exists under a given policy. *See* Exh. G at 10 and *supra*, n.7.

As such, this factor also weighs heavily against abstention in this case.

**3.     All Necessary Parties to Harco's Action Have Been Joined And Harco is Not a Necessary Party to the California Lawsuit**

See discussion of number 2 above.  In addition, under Fed. R. Civ. P. Rule 19, parties are necessary only if, in their "absence, the court cannot accord complete relief among existing parties" or they hold:

an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)   as a practical matter impair or impede the person's ability to protect the interest; or

(ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Again, the Motion does not argue that necessary parties are absent in this case and, manifestly, none of the conditions of Rule 19 are present here.

**4.     That Harco is Amenable To Process In California is of No Weight**

Although Harco is amenable to service in California, this factor is entitled to no weight here.  This factor focuses on whether all necessary parties can be brought before a particular court. Here, the putative insureds do not, and cannot, object to proceeding before this Court as they are already litigating before this Court in the *Lively* Lawsuit.

**5.     Avoiding Duplicative or Piecemeal Litigation**

Duplicative litigation arises only when "two substantially identical lawsuits proceed at the same time." *Dunkin' Donuts Franchised Restaurants LLC v. Rijay, Inc.,* 2007 WL 1459289, at *5

14

n.17 (S.D.N.Y. May 16, 2007).[13] The California Lawsuit and this case are far from "substantially identical." As detailed above, the California Lawsuit involves different insurers, different policies, and different coverage issues.

The Wayfarer Parties' reliance on *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), to argue that this case could result in "piecemeal litigation" misreads that decision. The Wayfarer Parties quote *Colorado River's* reference to "avoidance of piecemeal litigation" as though the mere existence of similar state and federal actions automatically warrants abstention.[14] However, the Supreme Court's concern in *Colorado River* was far narrower. Abstention was proper there only because Congress, through the McCarran Amendment, had expressly favored unified state adjudication of water-rights claims within a comprehensive state system. *Id.* at 819. The Court emphasized that this "clear federal policy" supported abstention and held that "the mere potential for conflict in the results of adjudication does not, without more, warrant staying the exercise of federal jurisdiction." *Id.* at 816.

No comparable federal policy or unified state system exists here, and the mere possibility

---

[13] The analysis in *Dunkin' Donut*s illustrates the type of "piecemeal litigation" which courts seek to avoid by way of abstention and, in turn, highlights why this is not a concern here. In *Dunkin Donuts*, a franchisee sought a declaratory judgment in state court that it had not breached its franchise agreements with Dunkin. Meanwhile, Dunkin and other defendants had commenced a parallel federal court trademark-infringement action seeking to stop a particular shop owner from continuing to use the Dunkin' Donuts trademark, which had been granted to the shop owner by the franchisee. Because both suits arose from the same underlying transaction (the alleged breach of the franchise agreements), the resolution of one would necessarily determine the other, creating an obvious risk of inconsistent outcomes. In those circumstances, the court deemed the situation classic "piecemeal litigation." *Id.* No such interdependence exists here.

[14] Wayfarer also misconstrues the holdings of *Moses H. Cone* and *Woodford*, neither of which supports abstention in the circumstances presented here. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14–19 (1983) (reaffirming that abstention remains "the exception, not the rule," and that the "danger of piecemeal litigation" justified abstention in *Colorado River* only because of a unique federal policy favoring unified state adjudication of water rights); *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 521–24 (2d Cir. 2001) (finding abstention appropriate where identical state and federal actions sought to resolve the same dispute between the same parties, while emphasizing that factual overlap alone does not present the exceptional circumstances required for *Colorado River* abstention).

that a future proceeding might be asserted raising parallel issues does not suffice to strip a federal court of its properly invoked jurisdiction. Rather, this case involves a private insurance contract and this Court's diversity jurisdiction, which was properly invoked, is not challenged. Moreover, even if Wayfarer intends to assert affirmative defenses or counterclaims against Harco in this action for recovery of defense costs and for bad faith and punitive damages as it asserts against the Other Insurers in the California Lawsuit, those defenses/claims will necessarily turn on the specific terms of the Harco Policies and Harco's conduct in connection with its coverage determination. *See supra*, Background § B-D and Argument § A. Accordingly, permitting this case to proceed will not create duplicative or piecemeal litigation, and this factor does not favor abstention.

### 6.    Harco Did Not Engage in Improper Forum Shopping

The Wayfarer Parties' Motion asserts Harco engaged in forum shopping, but the circumstances demonstrate otherwise. The forum shopping here is by the Wayfarer Parties, not Harco, as they filed a later, separate coverage action in California and now seek to use that filing to divest this Court of jurisdiction properly invoked by Harco. The Wayfarer Parties further assert that Harco "raced to the courthouse" to prevent the Wayfarer Parties from their preferred forum.

Contrary to these arguments, the facts show that Harco filed this action only after issuing its coverage determination, being summarily told that its position was wrong and a substantive explanation would follow, and receiving no further or substantive response for a month. Harco also did not receive any indication from the Wayfarer Parties, formal or otherwise, that the Wayfarer Parties were planning to file suit against Harco. Instead, Harco properly filed this action under the DJA for precisely the purpose it was designed to serve, *i.e.,* to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp., Inc.*, 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003) (quoting

16

*Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963)). *See also Harleysville,* 681 F. Supp. 3d at 167–68 (exercising jurisdiction because declaratory relief would settle the insurer's duties, relieve uncertainty, and there was no indication of procedural gamesmanship). Harco's filing is plainly consistent with the DJA's intended function: to obtain a prompt resolution of its coverage obligations for litigation already pending in this District, not a tactical race to the courthouse.

The cases cited in the Motion are readily distinguishable because they involve clear evidence of tactical, anticipatory filings in response to express threats of litigation. *E.g. A & E Television*, 2010 WL 2308092, at *2–3 (plaintiffs filed suit to gain a procedural advantage *after* receiving a letter from the defendant advising that they would sue within 10 days and attaching a draft complaint); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.,* 735 F. Supp. 581, 584-585 (S.D.N.Y. 1990) (after insurer received a letter from its insured warning that suit would be filed in Texas by a specific date, the insurer requested an extension of time to respond then, instead of responding, filed suit accompanied by a TRO seeking to bar the insured's suit).[15]

Here, in contrast, for all Harco knew, the Wayfarer parties had decided to postpone resolution of their disagreement with Harco's coverage position until the after resolution of the *Lively* Lawsuit. Given the extensive public media attention on the *Lively* Lawsuit, Harco had no reason to believe the Wayfarer Parties intended to address the coverage dispute promptly and had every reason to believe that the Wayfarer Parties were content to sit on their hands pending resolution of the *Lively* Lawsuit. In short, rather than forum shopping, Harco's filing exemplifies the proper use of the DJA, which exists to allow a party facing uncertainty about its legal

---

[15] Even further afield is *N. Am. Airlines,* 2005 WL 646350, at *19, where the plaintiff "prematurely abandoned [an ongoing] collective bargaining process" and filed suit on the same day a mediator was assigned as part of the parties' engagement in an extensive dialogue towards resolution."

obligations to seek timely judicial resolution rather than remain bound by its adversary's choice of when and where to litigate.

Factor 6 – forum shopping – therefore strongly favors Harco, not the Wayfarer Parties.

### 7.    The Relative Convenience of the Fora Weighs In Favor Of Proceeding in This Court

The underlying *Lively* Lawsuit is already before this Court, and this Court has already expressly recognized the relationship between the facts at issue in the *Lively* Lawsuit and Harco's coverage position. *See* Exh. F (Court's acceptance of Harco's action as "related" to the *Lively* Action) and *See* Exh. A, p. 3 (denying motion to quash Ms. Lively's subpoena to Harco because the Subpoena calls for information relevant to [Ms. Lively's] claims …"). The Wayfarer Parties are no more inconvenienced by proceeding with this action in this Court than they are in proceeding with the *Lively* Lawsuit. So, any suggestion of inconvenience for the Wayfarer Parties is entirely hollow and unpersuasive.

Further, as Harco is incorporated in North Carolina and has its principal place of business in Raleigh, North Carolina, New York is relatively more convenient than California. And, while the Wayfarer Parties argue that some witnesses are located in California, that point carries little weight. The location of witnesses is not a significant factor here, and multiple relevant witnesses, including Ms. Lively, are present in New York. Ms. Lively's testimony is directly relevant to when and whether the Wayfarer Parties were aware of her complaints of misconduct on the set.

The Wayfarer Parties' assertion that proceeding with this action separate from the California Lawsuit will require "duplicative" document productions similarly carries very little weight. While the Wayfarer Parties may need to produce overlapping documents in both actions, they will have to produce those documents to Harco and each of the Other Insurers regardless of the forum. The Wayfarer Parties will also have to produce documents to each insurer relevant to

the application for that insurers' policy and the specific coverage terms of that policy. In other words, proceeding with separate actions will not increase the burden of document productions; separate document productions will be required because of differences in the terms of each insurer's policy(ies) and the information requested and submitted in the applications for those policies, to the extent relevant.

As the court explained in *Ryan v. Volpone Stamp Co*., 107 F.Supp.2d 369, 395 (S.D.N.Y. 2000), although the state court was equally capable of adjudicating the dispute, there [were] no special or unique circumstances…that justify dismissing this action in deference to the state proceeding." *Id*. at 397. The same is true here.[16]

### 8.     The Order Of Filing Favors This Court Exercising Jurisdiction

As it is undisputed that this action was filed first, this factor weighs in favor of denying the Motion. Courts have long held that, absent strong countervailing considerations, the first filed case is the one that should proceed. This result is especially appropriate here as there is in fact no later filed action between Harco and the Wayfarer Parties and as the other *Brillhart/Wilton* factors favor this Court's exercise of jurisdiction.

Notably, even the Wayfarer Parties recognize that this factor favors Harco. So, rather than disputing this point, they cite *Gen. Reins.,* 853 F.2d 78, for the proposition that order of filing is of

---

[16] The Wayfarer Parties also cite *Hartford Accident & Indem. Co. v. Hop-On Int'l Corp.,* 568 F. Supp. 1569, 1571 (S.D.N.Y. 1983) for the proposition that abstention is warranted when an insurance dispute can be resolved "completely, fairly and quickly" in a state court forum. However, as with the majority of the cases cited in the Motion, *Hartford* involved a truly parallel proceeding filed in state court between the same insurer and insured under the same policy. *Id*. at 1574. Here, in contrast, there is no such parallel proceeding pending between Harco and the Wayfarer Parties. In addition, unlike the circumstances at issue in *Hartford,* the *Lively* Lawsuit is pending in this District, where this Court has overseen discovery and recognized the overlap with Harco's action. Further, with respect to "swiftness," amending the California Lawsuit (where all of the defendants have already joined issue), or commencing a new action in a California federal district court, would only further delay proceedings in this action and the California Lawsuit.

"no importance" if the filings are just a few weeks apart. Even if that were true, the factor still does not weigh in their favor; it is at best neutral.

In any event, *Gen. Reins* is readily distinguishable here as noted above. *See supra*, n.12. *See also*, 853 F.2d at 81 (noting that abstention was appropriate as "the amount of primary coverage in a particular period, the layer of coverage of the particular excess policy, and the extent to which the underlying primary and excess coverage has been or is likely to be exhausted" would be addressed only in the parallel state court litigation and the district court's failure to give weight to the order of filing was not an abuse of discretion because only a few weeks separated the filings and. *Cf. Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 274-78 (2d Cir. 2008) (holding that an insurer's declaratory judgment action was entitled to priority under the first-filed rule where it was filed before the insured's suit and in the absence of any direct threat of litigation).

### 9.    Choice Of Law Considerations Do Not Support Abstention

The Wayfarer Parties argue that this factor weighs in their favor that because this case does not involve any questions of federal law and because California has a "particular interest in ensuring the proper application of its insurance law[s]." In support of this argument, they cite *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382 (1969) and *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 137 (2d Cir. 1991). This argument is a red herring as *Daystrom* and *Passalacqua* do not concern abstention; they address only choice-of-law principles. 24 N.Y.2d at 377-380; 933 F.2d at 137. Nothing in those cases, or any other authority cited by the Wayfarer Parties, suggests that a state court is inherently better suited than a federal court exercising diversity jurisdiction to adjudicate a private insurance coverage dispute.

In any event, choice-of-law factors do not weigh in favor of abstention here because federal courts, including this Court routinely and effectively apply the laws of other jurisdictions,

particularly where, as here, the case presents straightforward state law issues and there are no parallel proceedings underway. *See, e.g., Harleysville,* 681 F. Supp. 3d at 165-66 (declining to abstain from an insurer's declaratory judgment action even though it involved only state law issues and was filed after the insurer denied coverage and before the insured had disputed that denial, explaining that the denial rendered the parties' positions as "indisputably adverse" and that federal courts sitting in diversity routinely adjudicate similar disputes under state law); *Cont'l Cas. Co. v. Phoenix Life Ins. Co.,* 2020 WL 4586699, at *4 (D. Conn. Aug. 10, 2020) (exercising jurisdiction of an insurers' declaratory judgment action in part because "this case does not involve novel or complex state law issues that are better left to the state courts to decide; instead, this case centers on a question of contract interpretation that is well within the competency of this Court" (quotation marks and citation omitted)); *Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.,* 263 F. Supp. 3d 471, 475 (S.D.N.Y. 2017) ("The very existence of diversity jurisdiction severely undermines any argument that federal courts should decline to hear declaratory judgment claims between diverse parties merely because state-law questions are in issue ...."); *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 609-610 (S.D.N.Y. 2015) declining to abstain from an insurer's coverage action even only state-law insurance issues were involved, explaining that the court "place[d] little stock in the fact that state law will govern this dispute" as it was "capable of handling issues of state insurance or contract law when they arise").

Moreover, as noted above, the Wayfarer Parties themselves, in their July 22, 2025 letter assert that New York and California follow the same legal principles on key issues such as the scope of the duty to defend. If the relevant law is the same, then there is no conflict requiring deference to a California court, and this  factor carries no weight in favor of abstention.

By asserting that federal courts should decline jurisdiction whenever an insurer's

declaratory judgment action raises state law insurance issues, the Wayfarer Parties are implicitly arguing that diversity jurisdiction should never be exercised in insurance coverage disputes. This would effectively, and improperly, nullify diversity jurisdiction for an entire class of cases Congress expressly placed squarely within the bounds of federal jurisdiction and which are regularly addressed by federal courts.

With this Court's familiarity with the facts and parties in the *Lively* Lawsuit already pending before this Court, this Court is the proper and most efficient forum to resolve Harco's coverage obligations in a coordinated manner. Further, because no duplicative, parallel state action exists between Harco and the Wayfarer Parties, and because this case is soundly within the Court's diversity jurisdiction, the absence of a federal question carries no weight in favor of abstention.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Wayfarer Parties' Motion to Dismiss or Stay should be denied in its entirety, and this Court should neither dismiss nor stay this action.

Dated:    November 21, 2025        Respectfully submitted,
          New York, New York

                                    SKARZYNSKI MARICK & BLACK LLP

                                    BY:   /s/ *Evan Shapiro*
                                          Evan Shapiro
                                          James T. Sandnes
                                    One Battery Park Plaza, 32nd Floor
                                    New York, New York 10004
                                    Telephone:  (212) 820-7700
                                    Email: eshapiro@skarzynski.com
                                           jsandnes@skarzynski.com

                                    *Attorneys for Plaintiff, Harco National Insurance*
                                    *Company*

4905-2816-4472,