# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARCO NATIONAL INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No.: 1:25-cv-5949 |
| - against - | COMPLAINT |
| WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, IT ENDS WITH US MOVIE LLC, A California Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, and STEVE SAROWITZ, an individual, | |
| Defendants. | |

Plaintiff Harco Insurance Company ("Harco"), by and through its undersigned counsel, brings this action for a declaratory judgment pursuant to Fed. R. Civ. P. Rule 57 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, against Wayfarer Studios LLC ("Wayfarer"), It Ends With Us Movie LLC ("IEWUM"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), and Steve Sarowitz ("Sarowitz") (Wayfarer, IEWUM, Baldoni, Heath, and Sarowitz are jointly, the "Wayfarer Defendants"), for the purpose of determining a question of actual controversy between the parties as follows.

**Nature of the Action**

1.      By this action, Harco seeks a declaration that the Management Liability Policies issued by Harco to Wayfarer, one effective from July 15, 2023 to July 15, 2024 (the "2023 Policy") and one effective from July 15, 2024 to July 15, 2025 (the "2024 Policy") (the 2023 Policy and 2024 Policy are jointly the "Policies"[1]) do not provide coverage for the claims asserted by Blake

---

[1] A copy of the 2024 Policy, redacted to maintain Wayfarer's confidential information, is attached as Exhibit A. The relevant terms of the 2023 Policy are the materially the same as those in the 2024 Policy.

Lively ("Lively") against the Wayfarer Defendants and others in a lawsuit captioned *Lively v. Wayfarer Studios, et al.*, U.S.D.C., S.D.N.Y. Case No. 1:24-cv-10049-LJL (the "Lively Action" or the "Underlying Action").

2.    The Lively Action alleges that, during early 2023, while Lively was working as a lead actor in connection with pre-production and filming on the set of a film called "It Ends With Us" (the "Film"), the Wayfarer Defendants sexually harassed her, subjected her to a hostile work environment. It further alleges that the Wayfarer Defendants later retaliated against her for complaining about such mistreatment.

3.    The Lively Action was filed in or about December 2024. However, it alleges that during April through June 2023, *i.e.*, before the inception of the 2023 Policy, Lively and others complained of sexual harassment during pre-production and production of the Film. It further alleges that Baldoni and Heath acknowledged that they were aware of "serious HR problems on set." In addition, allegations of the Complaint in a separate action filed by Wayfarer and others against Lively and others (the "Wayfarer Action") admit that Lively raised her complaints with Baldoni and Heath as early as May 2023.

4.    Despite the acknowledged pre-July 2023 complaints by Lively and others, Wayfarer's July 2023 Application for the 2023 Policy includes a letter from Wayfarer which warrants that no person or entity for whom the insurance is intended has any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a claim which may fall within the Employment Practices Liability coverage if issued by Harco (the "2023 Warranty"). The 2023 Warranty also states that "IT IS AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM ARISING THEREFROM

(WHETHER OR NOT DISCLOSED HEREIN), … IS EXCLUDED FROM THE PROPOSED COVERAGE." (the "2023 Prior Knowledge Exclusion").[2]

5.      The Lively Action also alleges, and the Wayfarer Defendants also acknowledge, that Lively's complaints were further reported in a November 9, 2023, email from Lively's lawyer to Wayfarers' lawyers which demanded that the Wayfarer Defendants agree to enact specified changes on-set to protect Lively (the "November 2023 Demand"). The November 2023 Demand expressly reserved Lively's legal rights and remedies in connection with her complaints. Although the November 2023 Demand was sent to Wayfarer during the 2023 Policy Period, it was not reported to Harco within the time set forth in the 2023 Policy as a condition precedent to coverage.

6.      In July 2024, Wayfarer submitted an Application for renewal of the 2023 Policy. The first page of the 2024 Renewal Application includes a notice, in all capitals which advised Wayfarer that it should report any currently known claims or circumstances that could result in a claim to its current insurer because "[HARCO] WILL NOT PROVIDE COVERAGE FOR CLAIMS OR INCIDENTS WHICH THE APPLICANT IS AWARE OF PRIOR TO THE INCEPTION DATE OF ANY COVERAGE THAT IS OFFERED AND ACCEPTED." (the "2024 Prior Knowledge Exclusion").[3] Despite this notice, and despite the November 2023 Demand and additional allegations of sexual harassment presented by Lively during a January 2024 meeting, Wayfarer's 2024 Renewal Application advised Harco that there was no claim, notice of potential claim, or any situation that may give rise to a claim within the last 12 months.

7.      On April 25, 2025, the Wayfarer Defendants gave Harco first notice of the Lively Action and demanded that Harco provide them with a defense and indemnity in the Lively Action

---

[2] The 2023 Warranty is attached hereto as Exhibit B.

[3] The 2024 Renewal Application, redacted to maintain Wayfarer's confidential information, is attached hereto as Exhibit C.

pursuant to the terms of the 2024 Policy.  By letter dated June 20, 2025, Harco advised the Wayfarer Defendants that there is no coverage for the Lively Action under the 2024 Policy or the 2023 Policy. The Wayfarer Defendants have advised Harco that they disagree with Harco's coverage position. Accordingly, there presently exists a genuine dispute regarding coverage under the Policies.

### The Parties

8.      Plaintiff Harco National Insurance Company is a stock company incorporated in North Carolina with its principal place of business in Raleigh, North Carolina.

9.      Upon information and belief, defendant Wayfarer Studios LLC is a Delaware Limited Liability Company with its principal place of business in California and all of its members are citizens of California and/or Illinois.

10.      Upon information and belief, defendant It Ends With Us Movie LLC, is a California Limited Liability Company with its principal place of business in California. Upon information and belief, Wayfarer is the sole member of IEWUM and all of the members of IEWUM are citizens of  California and/or Illinois.

11.      Upon information and belief, defendant Justin Baldoni is an individual who resides in Santa Paula, California, and is a co-founder and Co-Chairman of Wayfarer.

12.      Upon information and belief defendant Jamey Heath is an individual who resides in Los Angeles, California, has been Wayfarer's Chief Executive Officer since March 2024 and was President of Wayfarer during production of the Film.

13.      Upon information and belief defendant Steve Sarowitz is an individual who resides in Highland Park, Illinois, and is a co-founder and Co-Chairman of Wayfarer.

14.     Upon information and belief each of the defendants do business or have conducted business in New York, within the meaning of CPLR §§ 301 and 302 such as to make the assertion of this Court's *in personam* jurisdiction proper.

## Jurisdiction and Venue

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff, Harco, on the one hand, and the Wayfarer Defendants on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     Specifically, this action involves the Wayfarer Defendants' demand that Harco provide it with a defense and indemnity for liability, if any, in the Wayfarer Action. On information and belief, the Wayfarer Defendants' defense expenses in the Underlying Action are currently in excess of $75,000, and continue to be incurred.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Underlying Action for which coverage is sought is pending in this District such that the putative insurance coverage obligations and the coverage dispute arose in this District.

## Factual Background

A.     *The Underlying Action*

18.     The currently operative Lively Action FAC (Case No. 1:24-cv-10049-LJL, Doc. 84) is asserted by Lively against the Wayfarer Defendants as well as certain individuals and entities allegedly retained by the Wayfarer Defendants to assist with public relations and crisis management (defendants other than the Wayfarer Defendants are jointly the "PR Defendants") in anticipation of Lively making public complaints against the Wayfarer Defendants.

19.     The Lively Action FAC alleges that, prior to commencement of on-set photography

in May 2023, and on-set during May through June 2023, while plaintiff Lively was employed by Wayfarer and/or IEWUM as an actor in the Film, she was sexually harassed by the Wayfarer Defendants. The alleged harassment was primarily by Baldoni and Heath, both of whom controlled Lively's work given Baldoni's positions as a Co-Chairman of Wayfarer, Director of the Film, and the Co-Lead in the Film and Heath's positions as the CEO of Wayfarer and IEWUM and due to his frequent presence on the set. Each of Baldoni, Heath, and Sarowitz, were also allegedly involved in the retaliation.

20.     The Lively Action FAC further alleges that, although Lively complained about and reported the sexual harassment during April through June 2023, these reports were ignored, which created a hostile work environment on the basis of her gender.

21.     The Lively Action FAC also alleges that Heath orally acknowledged that an "HR report" had been submitted before the first day of shooting, that Baldoni acknowledged that comments he made to Lively appeared to offend her, and in an email dated June 1, 2023, Baldoni acknowledged an HR complaint by another female actor on the Film.

22.     In mid-June 2023, production of the Film was suspended due to the SAG-AFRA guild strike.

23.     Before production resumed, by an email dated November 9, 2023 from Lively's lawyer to the Wayfarer Defendants' lawyers, Lively's lawyer noted the prior complaints by Lively and others regarding conduct during production of the Film and advised that Lively would not return to production unless the Wayfarer Defendants agreed to cease such offensive conduct (the "November 2023 Demand"). A copy of the November 2023 Demand is attached to the Lively Action FAC as Exhibit A (Doc. 84-1) and states, in relevant part (italics added):

> … *It is no surprise to the Film's producers* that the experience of shooting the Film has been deeply concerning on many levels. *The complaints of our client*

*and others have been repeatedly conveyed and well-documented throughout pre-production and photography.*

*While we reserve all legal rights*, at this stage our client is willing to forego a more formal HR process in favor of everyone returning to work and finishing the Film as long as the set is safe moving forward. In order for our client to feel safe returning to the production, *we are attaching a list of protections that will need to be guaranteed and observed by the Film's producers*. If the production is unwilling to accept or uphold these protections, our client is prepared to pursue her full legal rights and remedies.

*This letter is not intended to constitute a full statement of all facts and circumstances relating to this matter. It is not intended to be, nor should it be construed as, a waiver, release or relinquishment of any of our client's rights or remedies, legal or equitable, all of which are hereby expressly reserved.*

24.    The list of protections referenced in and attached to the November 2023 Demand (the "List of Protections") is a 17-point list which includes, for example: (a) no improvising of scenes involving physical touching, simulated sex or nudity, (b) no physical touching and/or comments on Lively's physical appearance unless in connection with the character and scene work; and (c) no discussion of personal experiences with sex or nudity.  The List of Protections also states: "[t]here shall be no retaliation of any kind against [Lively] for raising concerns about the conduct described in this letter or for these requirements[]" and that retaliation against Lively, "including during publicity and promotional work, … will be met with immediate action."

25.    The Lively Action FAC also alleges that Lively, Baldoni, Heath, and others attended an in-person meeting on January 4, 2024, at which Lively presented 30 types of inappropriate and unwelcome conduct by Baldoni and Heath which had occurred during the spring of 2023 in connection with the production of the Film.

26.    Following the January 4, 2024 meeting, Lively and the Wayfarer Defendants, through IEWUM, executed a written agreement to implement and follow the List of Protections. This Agreement is dated as of November 15, 2023 and executed on January 15, 2023 (the "2023 Contract Rider"), which is attached to the Lively Action FAC as Exhibit B (Doc. 84-1). The 2023

Contract Rider does not release the Wayfarer Defendants from the alleged misconduct in the Spring of 2023, with respect to which Lively's rights were expressly reserved and not waived pursuant to the November 2023 Demand.

27.     The Lively Action FAC alleges, and the Wayfarer Action FAC confirms, that after filming was concluded in early February 2024, Lively's attitude toward Baldoni remained hostile as Lively had stopped following Baldoni on social media and refused to appear at promotional events alongside Baldoni.

28.     The Lively Action FAC and documents summarized and reproduced therein further indicate that, after filming was concluded in early February 2024, Baldoni and the Wayfarer Defendants remained concerned that Lively would pursue her allegations regarding inappropriate conduct of Baldoni and Heath during shooting of the Film. Examples of their concerns are seen in multiple communications prior to and up to release of the Film on August 9, 2024, between the Wayfarer Defendants and Abel (Wayfarer's publicist and one of the PR Defendants), which are quoted or reproduced in the Lively Action FAC. In these communications, the Wayfarer Defendants express their concern that Lively would pursue her allegations of on-set misconduct and they therefore needed a plan to "get ahead of" such anticipated claims. For example, in June and July 2024, communications between Abel, Heath, and Baldoni indicate that they were reviewing the List of Protections to prepare to refute the allegations implicit therein. Also, on or about July 31, 2024, following the recommendations of Abel, the Wayfarer Defendants began retaining additional PR Defendants to assist with using the internet and social media to promote stories critical of Lively and thereby undermine Lively's claims regarding the sexual harassment and other misconduct on during production of the Film.

29.     Upon information and belief, on or about December 20, 2024, Lively filed an

administrative complaint with the California Civil Rights Department (the "CRD Complaint"), in which she alleged she was the victim of sexual harassment during production of the Film and of subsequent retaliation attempting to silence her from speaking out about such harassment and the resulting hostile environment. The CRD Complaint was allegedly delivered to Wayfarer accompanied by a Cease and Desist Letter.

30.    Upon information and belief, Lively filed the original Complaint in the Lively Action on December 31, 2024.

31.    Upon information and belief, the Lively Action FAC was filed on February 18, 2025. The Lively Action FAC is asserted by Lively against the Wayfarer Defendants and the PR Defendants.

32.    The Lively Action FAC purports to assert fifteen causes of action based on:  (1) Sexual Harassment in violation of Title VII against IEWUM and Wayfarer; (2) Retaliation in violation of Title VII against IEWUM and Wayfarer; (3) Sexual Harassment in violation of FEHA– Cal. Gov. Code  Gov. Code § 12940 against IEWUM, Wayfarer, Baldoni and Heath; (4) Retaliation in violation of FEHA–Cal. Gov. Code § 12940 against IEWUM and Wayfarer; (5) Retaliation in violation of the Cal. Labor Code–Cal. Labor Code § 1102.5 against IEWUM and Wayfarer; (6) Failure to Investigate, Prevent, and/or Remedy Harassment in violation of FEHA– Cal. Gov. Code § 12940 against IEWUM and Wayfarer; (7) Aiding and Abetting Harassment and Retaliation in violation of FEHA–Cal. Gov. Code § 12940 against the PR Defendants; (8) Breach of Contract–Actor Loanout Agreement against IEWUM and Wayfarer; (9) Breach of Contract– Contract Ridger Agreement against IEWUM and Wayfarer; (10) Intentional Infliction of Emotional Distress against all Defendants; (11) Negligent Infliction of Emotional Distress against Wayfarer, Baldoni, and Heath; (12) False Light Invasion of Privacy–California Const. Art. I § 1

against all Defendants except IEWUM; (13) Sexual Harassment in violation of Cal. Civil Code–Civ. Code § 51.9 against Baldoni and Heath; (14) Defamation/Defamation Per Se against Wayfarer, Baldoni and Heath; and (15) Civil Conspiracy against all Defendants.[4]

33.    As relief, the Lively Action FAC seeks compensatory damages, damages for mental pain and anguish and severe and serious emotional distress, pre- and post-judgment interest, statutory and civil penalties, punitive damages, and attorneys' fees and costs.

B.    *The Wayfarer Defendants' Retain Counsel and File Answers in the Underlying Action*

34.    The ECF docket for the Lively Action shows that a Summons and Complaint was served on Wayfarer on January 3, 2025, on IEWUM on January 3, 2025, on Heath on January 8, 2025, on Sarowitz on January 10, 2025, and on Baldoni on January 16, 2025.

35.    The ECF docket for the Lively Action shows that defense counsel for the Wayfarer Defendants began filing appearances on January 22, 2025, Wayfarer and IEWUM filed Answers to the Lively Action Complaint on January 24, 2025, and each of the Wayfarer Defendants filed a separate Answer to the Lively Action FAC on March 20, 2025.

C.    *The Wayfarer Action*

36.    On January 16, 2025, Wayfarer, Heath, Baldoni, and others filed a Complaint in the U.S.D.C., S.D.N.Y., against Lively and others captioned *Wayfarer Studios, LLC, et al. v. Blake Lively, et al.*, Case No. 1:25-cv-00449-LJL (the "Wayfarer Action").

37.    On January 31, 2025, the plaintiffs in Wayfarer Action filed an Amended Complaint (the "Wayfarer Action FAC"[5]) which includes allegations acknowledging many of the

---

[4] Upon information and belief, Lively has withdrawn the tenth and eleventh causes of action.

[5] The original Complaint in the Wayfarer Action was filed under Case No. 1:25-cv-0049-LJL. However, the Wayfarer Action was then consolidated with the Lively Action for most purposes and the Wayfarer Action FAC was filed in the Lively Action, Case No. 1:24-cv-10049-LJL, as Doc. 50.

incidents that Lively alleges occurred in connection with production of the Film in April through June 2023, although it alleges that these events are mischaracterized by Lively. Examples include that: (a) on April 25, 2023, during pre-production, Lively's husband, Ryan Reynolds, "screamed at Baldoni and accused him of fat-shaming [Lively]"; (b) in May or June 2023 Baldoni recognized that comments he made to regarding her looking "sexy" appeared to have offended her; and (c) on several occasions, Baldoni discussed with Lively his personal sex life and his prior porn addiction.

38.    Allegations in the Wayfarer Action FAC also acknowledge receipt of the November 2023 Demand and acknowledge the January 2024 meeting in which Lively presented additional accusations of sexual harassment on the set. They further quote and replicate a December 27, 2023 email from Baldoni to the Film production team in which Baldoni notes the need to handle intimacy scenes carefully given Lively's accusations against him to date and the risk that this "could, and would very likely be used against [him] (as it already has)…."

D.    *The Wayfarer Defendants' Tender to Harco Under the 2024 Policy*

39.    Lively's complaints and allegations, the November 2023 Demand, and Wayfarer Defendants' ongoing concern that Lively might assert claims in the future were not reported under the then-in-effect 2023 Policy. Additionally, these events and ongoing concerns were not disclosed to Harco in the July 2024 Application for the 2024 Policy despite a specific request in the Application for such information.

40.    Although the Lively Action was commenced in December 2024, and the Wayfarer Defendants retained counsel to defend them in that Action no later than January 2024, they waited until nearly the end of April 2025 to submit notice of the Lively Action to Harco. Specifically, Harco received notice via emails dated April 25 and 28, 2025, which submitted the Lively Action FAC to Harco, purportedly as a claim under the 2024 Policy.

41.     By letter dated June 20, 2025, Harco advised Wayfarer of its denial of coverage under the terms of the Policies and applicable law due to Wayfarer's failures to disclose Lively's prior allegations, complaints, and claims regarding sexual harassment during pre-production and on the set of the Film as well as its failure to disclose the November 2023 Demand, in the Applications for the Policies. Specifically, and as detailed in the June 20, 2025 letter and below, Harco denied coverage on the grounds that: (a) the November 2023 Demand is a Claim first made during the 2023 Policy Period but is not covered under the 2023 Policy because it was not reported to Harco in accordance with is the requirements of the 2023 Policy; (b) the Lively Action and the November 2023 Demand are Related Claims as defined in the Policies and, as such, are deemed under the Policies to be a single Claim first made during the 2023 Policy and is not a Claim "first made" during the 2024 **Policy Period** as required for coverage under the Liability Insuring Agreements of the 2024 Policy; and (c) coverage is precluded pursuant to the known claims or circumstances exclusions set forth in the Applications for the Policies.

42.     The June 20, 2025, letter also briefly listed and generally reserved rights with respect to additional potentially relevant terms, conditions and limitations of the Policies.

43.     In a reply email on June 20, 2025, the Wayfarer Defendants advised Harco that they will be responding shortly to Harco's June 20, 2025 letter to explain why they believe Harco's position is wrong and should be withdrawn. They also requested a more detailed explanation of all additional potentially relevant terms, conditions and limitations of the Policies within Harco's knowledge and with respect to which Harco reserved its rights.

44.     Although Harco's June 20, 2025 letter included dispositive bases for its denial of coverage, pursuant to Wayfarer's request, by letter dated June 26, 2025, Harco provided Wayfarer with a further explanation of additional terms, conditions, limitations, and exclusion of the Policies

which, based on the information currently available to Harco, may apply to limit coverage for the Lively Action in whole or in part. To date, Wayfarer has not provided Harco with an explanation of the basis for its asserted belief that Harco's positions in its June 20, 2025 letter are wrong nor has it responded to Harco's June 26, 2025 letter.

45.     By providing its June 20 and 26, 2025 letters to Wayfarer, and by filing this action, Harco has not knowingly or intentionally waived any applicable defenses to coverage and reserves the right to assert and rely upon the additional defenses detailed in its June 26, 2025 letter and any other defenses to coverage that are or may become available or apparent as the Underlying Action proceeds or additional information is received. Harco has, and continues to, specifically reserve the right to amend or seek to amend its coverage position and/or this Complaint to assert such additional defenses.

E.     *The Harco Insurance Policies*

46.     In reliance on the July 28, 2023 Application, Harco issued the 2023 Policy to Wayfarer to be effective for the period from July 15, 2023 to July 15, 2024. In reliance on the Application and the Renewal Application, Harco issued the 2024 Policy to Wayfarer to be effective from July 15, 2024 to July 15, 2025. With certain exceptions, such as their effective periods, the Policies are subject to nearly identical terms, conditions, limitations and exclusions.

47.     The Policies are comprised of:  (a) General Terms and Conditions–Private Company (the "GTC"); (b) the Directors and Officers and Entity Liability Coverage Part (the "D&O Coverage Part"); and (c) the Employment Practices and Third Party Liability Coverage Part (the "EPL Coverage Part"). Harco's Limit of Liability under each of the Policies, inclusive of reasonable defense fees and costs (defined in the Policies as "**Defense Costs**"[6]), is $2,000,000 for

---

[6] Terms in bold type are defined in the Policies.

the D&O Coverage Part and $2,000,000 for the EPL Coverage Part. *See* GTC § IV. By endorsement number PML 11 68 04 20, Harco's Limit of Liability for the EPL Coverage Part includes an Additional Defense Costs Separate Limit of $1,000,000. This Additional Defense Costs Limit applies to Harco's payment of **Defense Costs** under the EPL Coverage Part, without eroding the EPL Coverage Part Limit of Liability.

48.     The Policies further specify that the D&O Coverage Part is subject to a $25,000 Retention applicable to Each **Claim** under Insuring Agreements B and C of the D&O Coverage Part and the EPL Coverage Part is subject to a $50,000 Retention for Each **Claim**. The Retentions apply to **Loss**, including **Defense Costs** and shall be paid by the **Insured Entity** before Harco is responsible for any payments. Further, pursuant to the Section IV. of the GTC of the Policies, both the Retention and the Limits of Liability are inclusive of **Defense Costs** such that payments by the **Insureds** of **Defense Costs** reduce the Retention obligation and payments of **Defense Costs** by Harco reduce the available Limit of Liability.

49.     The Policies each include separate Declarations for each of the GTC, the D&O Coverage Part and the EPL Coverage Part. Each of the Declarations states:

> These Declarations, along with the completed and signed **Application**, the policy forms and any written endorsements attached thereto shall constitute the contract between the Insureds and the **Insurer.**

50.     Section III. of the GTC of the Policies provides the following relevant definitions of terms used in the Policies:

> **Application** means all materials and information, including all signed applications and any materials attached thereto or incorporated therein, submitted by or on behalf of the Insureds to the Insurer in connection with the underwriting of this Policy or any policy issued by the Insurer of which this Policy is a direct or indirect renewal or replacement.
>
> \*          \*          \*
>
> **Employee** means any natural persons who have served, now serve or shall serve in any of the following positions, other than an **Executive**:

1. any natural persons in the regular service of an **Insured Entity** in the ordinary course of the **Insured Entity's** business and whom the **Insured Entity** compensates by salary, wage and/or commissions and has the right to govern and direct in the performance of such service, including any such natural persons who are leased, temporary, part-time or seasonal employees of the **Insured Entity**;

2. any natural person independent contractors who are treated under applicable law as employees of the **Insured Entity**; an

3. any volunteers of the **Insured Entity**;

provided any coverage for any such leased employees or independent contractors shall be specifically excess of any indemnification or insurance otherwise available to such leased employee or independent contractors from the applicable leasing company or any other source.

\* \* \*

**Insured Entity** means the **Named Insured** or any **Subsidiary**, including any such entity as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

\* \* \*

**Executive** means any natural person:

1. past, present or future duly elected or appointed director (including a shadow or de facto director), trustee (excluding a bankruptcy or litigation trustee), advisory board member, officer, governor or **Manager** of an **Insured Entity**;

2. past, present or future In-House General Counsel or Risk Manager of the **Named Insured**;

3. holder of a functionally equivalent position to those included in paragraph **1.** or **2.** above; …

**Executive Officer** means the Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, the General Counsel, the Risk Manager or any functionally equivalent positions in the **Named Insured**.

\* \* \*

**Named Insured** means the entity set forth in Item **1** of the General Terms and Conditions Declarations.

\* \* \*

**Related Claims** mean all **Claims** that are based upon, arising from or are logically or causally connected by the same, or any related or common, or a series of related or common, facts, circumstances, transactions or **Wrongful Acts**.

\* \* \*

51.     Section VI.A. of the GTC of the Policies provides that, as a condition precedent to their rights under the Policy, the **Insureds** must provide written notice to the Insurer of a **Claim**

as soon as practicable after an **Executive Officer** of the **Named Insured** first becomes aware of such **Claim**, subject to certain specified extensions. The reporting provision states (italics added):

> A.   _Reporting a Claim under any **Liability Coverage Part**_
>
> _As a condition precedent to their rights under a **Liability Coverage Part** with respect to a **Claim**,_ the **Insureds** must provide written notice to the Insurer of the **Claim** as soon as practicable after an **Executive Officer** of the **Named Insured** first becomes aware of such **Claim**, subject to the following:
>
> > 1.   The Insurer may assert that a notice of a **Claim** is not as soon as practicable only if the Insurer has been materially prejudiced by such late notice.
> >
> > 2.   _In any event, such written notice of **Claim** must be given to the Insurer no later than:_
> >
> > > a.   _ninety (90) days after the **Policy Period** terminates or expires_, if no **Extended Reporting Period** is purchased; or
> > >
> > > b.   the expiration date of the purchased **Extended Reporting Period**.

52.   Section VI.B. of the GTC of the Policies provides that an **Insured** may preserve coverage under the Policy for a potential future Claim by providing the Harco with Specifically:

> B.   Reporting a Notice of Circumstances Under any **Liability Coverage Part**
>
> If during the **Policy Period** the **Insureds** first become aware of circumstances that may give rise to a **Claim**, the **Insureds** may elect to submit to the Insurer a written notice of such circumstances, which must contain a description of the circumstances, the nature of the **Wrongful Act** and the persons involved.
>
> For purposes of the **Liability Coverage Parts**, any subsequent **Claim** that is based upon or arises out of the circumstances described in such notice will be deemed to have been first made in the **Policy Period** in which the notice of circumstances was first given to the Insurer.
>
> > *          *          *

53.   Section VII. of the GTC of the Policies provides:

> **VII.  RELATED CLAIMS**
>
> With respect to the **Liability Coverage Parts**, all **Related Claims** will be treated as a single **Claim** first made on the earliest date any of such **Related Claims** was first made or deemed made in accordance with the provisions of the applicable **Liability Coverage Part**.

\*    \*    \*

54.    Section IX. of the GTC of the Policies provides:

### IX.  APPLICATION

The Insurer has relied upon the truthfulness and accuracy of the statements, representations and information in the **Application**, which is incorporated into this Policy, in providing coverage under this Policy.

The **Application** for coverage under this Policy or any **Liability Coverage Part** shall be considered to be a separate **Application** for coverage by each **Insured Person**, and no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person** with respect to the **Application**.

If the **Application** contains any misrepresentation or omission made with the actual intent to deceive or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under a **Liability Coverage Part**, then with respect to any **Claim** based upon, attributable to, or arising out of the facts that were not truthfully and accurately disclosed as a result of such misrepresentation or omission, no coverage shall be provide under the respective **Liability Coverage Part** for any:

**A.**  **Insured Person** who knew the facts that were not truthfully and accurately disclosed in the Application (whether or not such misrepresentation or omission in the **Application** was known by such **Insured Person**) or any **Insured Entity** to the extent it indemnifies any such **Insured Person**; and

**B.**  **Insured Entity**, but only if any **Executive Officer** knew the facts that were not truthfully disclosed in the **Application** (whether or not such misrepresentation or omission in the **Application** was known by such **Executive Officer**).

The Insurer shall not rescind, in whole or in part, any coverage under any **Liability Coverage Part** for any reason.

55.    The Insuring Agreement in Sections **I.B** and **C.** of the D&O Coverage Part of the

Policies provide, respectively and in relevant part, that Harco shall pay on behalf of the **Insured**

**Entity**, **Loss** which the **Insured Persons** or an **Insured Entity** become legally obligated to pay

by reason of a **Claim** first made against the **Insured Persons** and/or an **Insured Entity** during the

**Policy Period** or, if applicable, the **Extended Reporting Period** for a **Wrongful Act**, but, with

respect to **Insured Persons**, only to the extent the **Insured Entity** has indemnified the **Insured Person** for such **Loss**.

56.     Section III. of the D&O Coverage Part of the Policies provides the following additional definitions for purposes of this Coverage Part, in addition to the terms set forth in the GTC:

> **Claim** means any of the following, including if applicable any appeal therefrom:
>
> 1. a written demand against an **Insured** for monetary damages or non-monetary or injunctive relief, commenced by the **Insured's** receipt of such demand; …
>
>        *       *       *
>
> **Insured** means any **Insured Person** or any **Insured Entity**.
>
> **Insured Person** means any **Employee** or **Executive**.
>
>        *       *       *
>
> **Wrongful Act** means any:
>
> 1. error, misstatement, misleading statement, neglect, breach of duty, omission or act committed, attempted or allegedly committed or attempted by:
>
>     **a.** an **Insured Person** in his or her capacity as such; or
>
>     **b.** an **Insured Entity**; or
>
> 2. matter claimed against an **Insured Person** solely by reason of his/her status as such.
>
>        *       *       *

57.     The Insuring Agreements in Section **I.A.** of the EPL Coverage Part of the Policies provide in relevant part that Harco shall pay, on behalf of the **Insureds**, **Loss** which the **Insureds** become legally obligated to pay by reason of an **Employment Claim** first made against the **Insureds** during the **Policy Period** or, if applicable, the **Extended Reporting Period** for any **Employment Practices Wrongful Act**. In addition, Harco shall pay, on behalf of the **Insureds**, **Defense Costs** which the **Insureds** become legally obligated to pay by reason of an **Employment Claim** first made against the **Insureds** during the **Policy Period** or, if applicable, the **Extended Reporting Period** for any **Employment Contract Breach**.

58.    Section II. of the EPL Coverage Part of the Policies includes the following definitions for purposes of this Coverage Part, in addition to the terms set forth in the GTC.

**Claim** means any of the following, including if applicable any appeal therefrom:

1. solely with respect to Insuring Agreement **A.,** any **Employment Claim;**

\*    \*    \*

**Employment Claim** means any of the following which are brought and maintained against an **Insured** by or on behalf of an y past, present, prospective or alleged **Employee** or **Executive** or applicant for employment by an **Entity**, including if applicable any appeal therefrom:

1. a written demand against an **Insured** for monetary damages or non-monetary or injunctive relief, commenced by the **Insured's** receipt of such demand, including a written demand for reinstatement, reemployment or reengagement;

\*    \*    \*

**Employment Contract Breach** means any actual or alleged breach of any employment-related oral, written or implied contract with an **Insured Entity**, including any such contract arising out of any personnel manual, employee handbook, policy statement or other representation.

\*    \*    \*

**Employment Practices Wrongful Act** means any of the following actually or allegedly committed by the **Insured Entity** or by **Insured Persons** in their capacity as such:

1. **Employment Discrimination**;

2. **Harassment**;

3. **Retaliation**;

4. **Workplace Tort**;

5. **Wrongful Employment Decision**; or

6. **Wrongful Termination.**

\*    \*    \*

**Insured Persons** means any:

1. **Executive** and any natural persons who were, now are or shall become a director of human resources or the functional equivalent thereof of the **Insured Entity**;

2. **Employee** who is not described in subparagraph 1. above; and

\*    \*    \*

**Insureds** means the **Insured Entity** and the **Insured Persons**.

59.     As noted above, Section III. of the GTC of the Policies defines the term **Application** to mean all materials submitted to Harco in the connection with the underwriting of a Policy or any policy issued by Harco of which the Policy is a direct or indirect renewal or replacement. In addition, Section IX. of the GTC of the Policies, which is fully quoted above, provides that Harco has relied upon the truthfulness and accuracy of the statements, representations and information in the **Application**, which is incorporated into the Policy, in providing coverage under this Policy and sets forth exclusions applicable in the event of misrepresentations or omissions in the **Application**.

60.     Here, the 2024 Policy is a direct renewal of the 2023 Policy. As part of Wayfarer's **Application** for the 2023 Policy, Heath, as President of Wayfarer, submitted a Warranty Letter on Wayfarer stationary, executed by Heath on July 28, 2023 (the "2023 Warranty"), which states in relevant part:

> No person or entity for whom this insurance is intended has any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a claim which may fall within the scope of the Proposed Insurance detailed above [the Employment Practices Liability for Policy Period from 7/15/2023 to 7/15/2024].
>
> Solely with respect to the above, no knowledge or information of any Insured Person shall be imputed to any other Insured Person. Solely the knowledge or information of the Company's Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, General Counsel, Risk Manager including the Office of the Risk Manager, shall impute to the entity Insureds.
>
> *          *          *
>
> IT IS AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM ARISING THEREFROM (WHETHER OR NOT DISCLOSED HEREIN), IN ADDITION TO ANY OTHER REMEDY THE INSURER MAY HAVE, IS EXCLUDED FROM THE PROPOSED COVERAGE.
>
> IT IS FURTHER AGREED THAT THIS LETTER SHALL BE DEEMED PART OF THE POLICY AND THE STATEMENT MADE THEREON SHALL BE DEEMED AN EXPRESS WARRANTY FOR ALL INSUREDS WHICH HAS BEEN RELIED UPON BY THE INSURER PURSUANT TO THE ISSUANCE OF COVERAGE.

In addition, the Renewal Application for the 2024 Policy was signed by Heath, as CEO of Wayfarer, on July 10, 2024. The 2024 Renewal Application sets forth the following notices at the top of the first page:

> **NOTICE:** THE COVERAGE PROVIDED UNDER THE **LIABILITY COVERAGE SECTIONS** IS LIMITED TO ONLY THOSE **CLAIMS** FIRST MADE DURING THE POLICY PERIOD, OR ANY APPLICABLE EXTENDED REPORTING PERIOD.
>
> \*      \*      \*
>
> **NOTICE [APPLICABLE TO THE LIABILITY COVERAGE SECTIONS]: THIS IS AN APPLICATION FOR CLAIMS-MADE AND REPORTED INSURANCE PROVIDED THROUGH HARCO NATIONAL INSURANCE COMPANY.** IT IS IMPORTANT THAT THE APPLICANT REPORT ANY CURRENTLY KNOWN CLAIMS OR CIRCUMSTANCES THAT COULD RESULT IN A CLAIM TO THE APPLICANT'S CURRENT INSURER OR PURCHASE AN EXTENDED REPORTING PERIOD ENDORSEMENT TO COVER SUCH CLAIMS OR INCIDENTS. HARCO NATIONAL INSURANCE COMPANY WILL NOT PROVIDE COVERAGE FOR CLAIMS OR INCIDENTS WHICH THE APPLICANT IS AWARE OF PRIOR TO THE INCEPTION DATE OF ANY COVERAGE THAT IS OFFERED AND ACCEPTED.

On the very next page, Item 6. of the General Applicant Information Section of the Item 6. of the 2024 Application asks:

> **6.**  Is there any claim, notice of potential claim or any situation that may give rise to a claim within the last 12 months?  If yes, please provide details.

In response to Item 6, Wayfarer circled the word "No." In addition, on page 9-10 of the 2024 Application, above the space for the Applicant's signature, Heath certified to the following:

> By signing this Application, the undersigned, on behalf of the Applicant and all insureds proposed for coverage, represents and agrees to each of the following five (5) items:
>
> **1.**  The Applicant firm has made a comprehensive internal inquiry or investigation to determine whether any Applicant firm member is aware of any act, error, omission, personal injury, fact, circumstance, situation or incident which could be a basis for a claim or suit under the proposed insurance;
>
> \*      \*      \*
>
> **3.**  Each of the statements and answers given in this Application, and in each of the supplemental applications are:

    **a.**  Accurate, true and complete to the best of the Applicant's knowledge;

    **b.**  No material facts have been suppressed or misstated;

    **c.**  Representations the Applicant firm is making on behalf of all persons and entities proposed to be insured;

    **d.**  A material inducement to the Insurer to provide insurance, and any policy issued by the Insurer is issued in specific reliance upon these representations.

4. This Application, along with each of the supplemental applications are hereby deemed to be attached to, and incorporated into, any policy contract that is issued, regardless of whether the Application or any of the supplemental applications are signed or dated;

*     *     *

<h3 style="text-align:center">FIRST CAUSE OF ACTION<br>(Declaratory Judgment – No Coverage Under the 2024 Policy's<br>Liability Insuring Agreements)</h3>

61. Harco re-alleges and incorporates by reference all allegations above as if fully set forth herein.

62. In relevant part, the 2024 Policy's Liability Insuring Agreements provide coverage for **Claims** for a **Wrongful Act** that are "first made" against the **Insureds** during the **Policy Period**.

63. The November 2023 Demand is a **Claim** for **Wrongful Acts** as those terms are defined in both the D&O Coverage Part and the EPL Coverage Part because the November 2023 Demand constituted "a written demand against an **Insured** for…non-monetary or injunctive relief, commenced by the **Insured's** receipt of such demand" and alleged **Wrongful Acts** by the **Insureds**.

64. Specifically, and as summarized above, the November 2023 Demand and attached List of Protections describe misconduct which Lively asserts previously occurred and demands specific injunctive relief in the form of the List of Protections to ensure such conduct does not

continue. It further threatens that if such relief is not granted, Lively will pursue her claims in a court.

65.    In addition, while the Wayfarer Defendants purportedly attempted to resolve the **Claim** presented by the November 2023 Demand, it was not resolved. Rather, the November 2023 Demand specifically states that it "is not intended to be, nor should it be construed as, a waiver, release or relinquishment of any of [Lively's] rights or remedies, legal or equitable, all of which are hereby expressly reserved."

66.    Further, the 2023 Contract Rider does not release Lively's claims of improper conduct. It also expressly prohibits retaliation against Lively for her reports and states that any retaliation for the matters raised by Lively "will be met with immediate action."

67.    The FAC further complains of retaliatory conduct by the Wayfarer Defendants in response to Lively's allegations of sexual harassment by the Wayfarer Defendants. As such, the November 2023 Demand and the Lively Action are **Related Claims** under the Policies as they are "based upon, arising from or are logically or causally connected by the same, or any related or common, or a series of related or common, facts, circumstances, transactions or **Wrongful Acts**."

68.    Pursuant to Section VII. of the Policies' GTC, all **Related Claims** "shall be treated as a single **Claim** first made on the earliest date any of such **Related Claims** was first made or deemed made in accordance with the provisions of the applicable **Liability Coverage Part**." Accordingly, the Lively Action is deemed under the Policies to be a **Claim** first made no later than the November 9, 2023 Demand.

69.    Accordingly, the Lively Action does not trigger the 2024 Policy's Liability Insuring Agreements because it is not a **Claim** that was "first made" during the **Policy Period**, which commenced on July 15, 2024.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment – No Coverage Under the 2023 Policy's Liability
Insuring Agreements)**

70.     Harco re-alleges and incorporates by reference all allegations above as if fully set

forth herein.

71.     Pursuant to Section VII. of the Policies' GTC, the Lively Action is treated as a

**Claim** first made no later than November 9, 2023, when the November 2023 Demand was received

by the Wayfarer Defendants pursuant to Section VII of the GTC.  It is therefore a **Claim** first made

during the 2023 Policy.

72.     Pursuant to Section VI.A. of the GTC of the 2023 Policy, as a condition precedent

to coverage under a **Liability Coverage Part**, the **Insureds** must provide written notice to Harco

of a **Claim** as soon as practicable after an **Executive Officer** of Wayfarer first becomes aware of

such **Claim** and, in any event, no later than ninety (90) days after the **Policy Period** terminates or

expires, if no **Extended Reporting Period** is purchased.

73.     No **Extended Reporting Period** was purchased by Wayfarer yet, notice of the

November 2023 Demand  was not provided to Harco until April 25, 2025, which is 314 days after

termination of the **Policy Period** of the 2023 Policy on July 15, 2024.  As notice of Lively's **Claim**

was not provided within the time required by the express, contractual, condition precedent to

coverage set forth in Section VI.A. of the 2023 Policy, coverage is not afforded by the 2023 Policy.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment – No Coverage Under the 2023 Policy Pursuant to the 2023
Warranty and 2023 Prior Knowledge Exclusions)**

74.     Harco re-alleges and incorporates by reference all allegations above as if fully set

forth herein.

75.     Based on the allegations of the Lively FAC, the Wayfarer FAC, the Wayfarer

Defendants' Answers to the Lively Action FAC, and the November 2023 Demand, there is ample

evidence that prior to, and no later than June 2023, the Wayfarer Defendants had knowledge of information, facts or circumstances which might give rise to a claim within the scope of the proposed 2023 EPL Liability Coverage.

76.     Despite this knowledge, Wayfarer's Application for the 2023 Policy includes the 2023 Warranty whereby Wayfarer represented to Harco that no person or entity for whom this insurance is intended had such knowledge or information.

77.     Wayfarer's 2023 Warranty expressly provides that it shall be deemed a part of the Policy which has been relied upon by the Insurer.

78.     Wayfarer's 2023 Warranty includes the 2023 Prior Knowledge Exclusion pursuant to which it is agreed that if the 2023 Warranty is wrong (i.e., if relevant knowledge or information exists), then any Claim arising from such knowledge or information (whether or not disclosed), is excluded from coverage under the Policy.

79.     Because of the Wayfarer Defendants' pre-July 2023 knowledge of Lively's allegations and complaints of sexual harassment coverage of the Lively Action under the 2023 Policy is precluded by the 2023 Warranty and 2023 Prior Knowledge Exclusion.

80.     In addition, because the Wayfarer Defendants' pre-July 2023 knowledge and information regarding Lively's allegations and complaints was omitted from the 2023 Warranty submitted as part of the Application for the 2023 Policy, the 2023 Policy does not provide coverage for the Lively Action pursuant to Section IX. of the GTC of the 2023 Policy.

### FOURTH CAUSE OF ACTION
**(Declaratory Judgment – No Coverage Under the 2024 Policy Pursuant to the 2024 Renewal Application and 2024 Prior Knowledge Exclusions)**

81.     Harco re-alleges and incorporates by reference all allegations above as if fully set forth herein.

82.     The Application for the 2024 Policy was executed by Heath on July 10, 2024 and the 2024 Policy incepted on July 15, 2024.

83.     Before July 2024, the Wayfarer Defendants were aware of Lively's allegations of sexual harassment on the set of the Film including because they had received the November 2023 Demand and had participated in the January 2024 meeting when Lively further discussed her allegations, both of which occurred within the 12 months prior to the Application.

84.     Correspondence among the Wayfarer Defendants in December 2023 and in May through July 2024, which is described and reproduced in the Lively Action FAC and the Wayfarer Action FAC, also provides ample evidence establishing that, prior to July 10 and 15, 2024, the Wayfarer Defendants were aware of Lively's claims of sexual harassment and were aware that Lively might yet pursue those claims.

85.     Despite their pre-July 10, 2024 knowledge of Lively's claims and despite their subjective belief that Lively might pursue such claims, Wayfarer circled "No" in response to the specific request in the 2024 Application that it disclose whether there is "any claim, notice of potential claim or any situation that may give rise to a claim within the past 12 months."

86.     Because of the Wayfarer Defendants' pre-July 2023 knowledge of Lively's allegations and complaints of sexual harassment and because of their knowledge of the November 2023 Demand and further complaints made within the 12 months prior to the July 10, 2024 Renewal Application for the 2024 Policy and the July 15, 2024 inception of the 2024 Policy, coverage of the Lively Action under the 2024 Policy is precluded by the 2024 Prior Knowledge Exclusion set forth in the 2024 Renewal Application.

87.     In addition, because of the Wayfarer Defendants' pre-July 2024 knowledge and information regarding Lively's allegations and complaints within 24 months prior to the Renewal

Application was omitted from the 2024 Renewal Application, the 2024 Policy does not provide

coverage for the Lively Action pursuant to Section IX. of the GTC of the 2024 Policy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Harco Insurance Company respectfully requests that judgment be entered

in its favor:

a. Declaring that Harco has no duty under the 2024 Policy to defend or indemnify the Wayfarer Defendants in connection with the Lively Action because the Lively Action is not a Claim first made during the 2024 Policy Period;

b. Declaring that Harco has no duty under the 2023 Policy to defend or indemnify the Wayfarer Defendants in connection with the Lively Action because they Wayfarer failed to report the November 2023 Demand within the time required by the 2023 Policy;

c. Declaring that Harco has no duty under the 2023 Policy to defend or indemnify the Wayfarer Defendants in connection with the Lively Action pursuant to the 2023 Prior Knowledge Exclusion in the 2023 Warranty and/or Section IX. of the GTC of the 2023 Policy;

d. Declaring that Harco has no duty under the 2024 Policy to defend or indemnify the Wayfarer Defendants in connection with the Lively Action pursuant to the 2024 Prior Knowledge Exclusion in the 2024 Renewal Application and/or Section IX. of the GTC of the 2024 Policy; and

e. granting to Harco such other relief as the Court deems just and proper.

Dated:     New York, New York          Respectfully submitted,
           July 21, 2025

                                   SKARZYNSKI MARICK & BLACK LLC

                                   BY:   _s/ Evan Shapiro_____
                                         Evan Shapiro
                                         Sarah F. Voutyras
                                   One Battery Park Plaza, 32nd Floor
                                   New York, New York 10004
                                   Telephone:  (212) 820-7700
                                   Email: eshapiro@skarzynski.com
                                          svoutyras@skarzynski.com

                                   *Attorneys for Plaintiff, Harco National Insurance Company*