# EXHIBIT G

# McGuireWoods

**McGuireWoods LLP**
1251 Avenue of the Americas
20th Floor
New York, NY 10020-1104
Phone: 212.548.2100
Fax: 212.548.2150
www.mcguirewoods.com

**Aleksandra Kaplun**
Direct: 212.548.7015.
akaplun@mcguirewoods.com
Fax: 212.715.2314.

July 22, 2025

<u>Via Email: Eshapiro@skarzynski.com</u>

Evan Shapiro, Esq.
Skarzynski Marick & Black LLP
One Battery Park Plaza, 32nd Floor
New York, NY 10004

  Re: *It Ends With Us Movie LLC adv Lively*, Claim No. 2502LI438717

Dear Ms. Shapiro:

  We are insurance recovery counsel for Wayfarer Studios LLC and the individual insured defendants (collectively, the "Insureds") in connection with the above matter. We write in response to your June 20, 2025 and June 26, 2025 letters. As you know, by those letters Harco National Insurance Company said that it had "determined that the Policy does not provide coverage for this matter."[1]

## Harco's Duty to Investigate

  Nowhere in your letters do you say what Harco did to investigate the claim before denying coverage. Indeed, your letters suggest that Harco did nothing more than look at its policy and perhaps the original and amended complaints. That falls far short of Harco's duties.

  Harco's duty to investigate requires it to seek all possible bases that might support coverage for the insured. In other words, Harco had an affirmative duty to try to help its Insureds establish coverage.

---

[1] We note that according to stories in the media, Harco yesterday filed a preemptive lawsuit in New York and that Harco is seeking to have its lawsuit deemed related to the *Lively* lawsuit. The Insureds do not believe that Harco acted appropriately in doing so and reserve all rights.

> [T]he insurer cannot deny the claim "without fully investigating the grounds for its denial." To protect its insured's contractual interest in security and peace of mind, "it is essential that an insurer fully inquire into possible bases that might support the insured's claim" before denying it. By the same token, denial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable. . . . The insurer may not just focus on those facts which justify denial of the claim.

*Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720-21 (2007) (citations omitted); *see also Brotherhood Mut. Ins. Co. v. Vinkov*, 2020 WL 2735623, at *3 (C.D. Cal. March 23, 2020) ("This duty to investigate requires the insurer to 'fully inquire' into the possible bases supporting the insured's claim before denying it." (citation omitted)); *Armas v. USAA Cas. Ins. Co.*, 2019 WL 3333279, at *6 (N.D. Cal. July 24, 2019) ("The insurer's investigation of an insured's claims must be thorough, including 'diligently search[ing] for evidence which supports its insured's claim.'" (citation omitted)); 10 Cal. Code Regs. § 2695.7(d) ("Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation").

Harco's duty to fully investigate its Insureds' claim before denying coverage is a fundamental governing principle. "Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim." *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 879 (2000). As the California Supreme Court has explained, "[f]or the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it . . . must give at least as much consideration to the latter's interests as it does to its own." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19 (1979).

Harco could not satisfy its duty to conduct a thorough investigation by simply reviewing its policy and the complaints in the *Lively* lawsuit. *See Eigner v. Worthington*, 57 Cal. App. 4th 188, 198 (1997) (insurer breached the duty to investigate by reviewing only policy and underlying complaint; "extrinsic evidence showing potential coverage was available when [the insurer] declined to defend or investigate" and a reasonable investigation would have "revealed facts giving rise to [the] duty to defend"); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2008) (facts outside the complaint are to be considered "when they reveal a possibility that the claim may be covered by the policy" (citation omitted)).

Harco also could not satisfy its duty by asking its Insureds for information. *See Hughes v. Blue Cross*, 215 Cal. App. 3d 832, 846 (1989) (insurer bears primary duty of inquiry and must make reasonable efforts to obtain relevant records; it

Evan Shapiro, Esq.
July 22, 2025
Page 3

cannot simply place a "burden of inquiry" on the insured); *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1625 (1996) (insurer breached duty to investigate by ignoring available evidence supporting claim and by failing through independent investigation to pursue more evidence); *Armas*, 2019 WL 3333279, at *6 ("The insurer's investigation of an insured's claims must be thorough, including 'diligently search[ing] for evidence which supports its insured's claim.'" (quoting *Mariscal*)). Instead, Harco affirmatively had to seek information relevant to its Insureds' claim. *See, e.g.*, *Shade Foods*, 78 Cal. App. 4th at 879-80. Therefore, we ask again: What did Harco do to investigate the possibility of coverage before denying its Insureds the defense promised under the Policy?

Unless Harco did the thorough investigation required by the law—and nothing shows that it did—it will "be liable for the costs of defense already incurred by the insured and could also be exposed to tort liability." *American Int'l Bank v. Fid. & Deposit Co.*, 49 Cal. App. 4th 1558, 1571 (1996); *see also Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 707 (1984) ("a failure to investigate and fairly appraise the third party's claim against the insured would breach the covenant of good faith and fair dealing"). "[W]here an insurer denies coverage but a *reasonable investigation* would have disclosed facts showing the claim was covered, the insurer's failure to investigate breaches its implied covenant" of good faith and fair dealing. *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1074 (2007).

Harco has fallen far short of meeting its burden here. As one California court of appeal held:

> [A]n insurer may only defeat an existing potential for coverage by *undisputed* facts that *conclusively* negate such coverage. This is particularly true where the insurer seeks to defeat coverage by reliance on an exclusion. An insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies. Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.

*Atlantic Mut. Ins. C. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-39 (2002) (citations omitted).

## **Harco's Burden**

The Harco Policy is a duty-to-defend policy that provides broad coverage whenever "any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim *potentially* covered by the policy."

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005) (emphasis added). Harco must defend its Insureds even if their "liability under the policy ultimately fails to materialize." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 299 (1993). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 299-300. Harco "faces an uphill battle from the beginning because the duty to defend in California is extensive." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010).[2]

Moreover, Harco bears the burden "to establish that the claim is specifically excluded." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). "[I]nsurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.'" *Id.* (citation omitted); *see also Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984) (exclusions and limitations to coverage "are strictly construed against the insurer and liberally interpreted in favor of the insured"). Even if Harco's interpretation of a policy term could be "considered reasonable," Harco would still not prevail because "to do so it would have to establish that its interpretation is the only reasonable one." *MacKinnon*, 31 Cal. 4th at 655. Accordingly, coverage must exist "so long as there is any other reasonable interpretation under which recovery would be permitted in the instant cases." *Id.*

---

[2] These same principles are true under New York law. As the New York Court of Appeals held more than 40 years ago:

> The duty to defend arises whenever the allegations in the complaint fall within the risk covered by the policy. It therefore includes the defense of those actions in which alternative grounds are asserted, even if some are without the protection purchased. Further, a policy protects against poorly or incompletely pleaded cases as well as those artfully drafted. . . . If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be.

*Ruder & Finn v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 669-70 (1981) (rejecting insurer's argument that "two solitary, unsubstantiated words" that were part of a "patently groundless and 'shotgun allegation' in the middle of . . . a completely unrelated federal antitrust cause of action which was, itself, undisputedly *not* covered" could not possibly evoke a duty to defend the insured); *see also Pension Trust Fund v. Federal Ins. Co.,* 307 F.3d 944, 951 & n.4 (9th Cir. 2002) ("remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty" (citing *Ruder*)).

## Harco's "Related Claims" Defense Is Meritless

Harco asserts in the first instance that "[t]he November 2023 Email is a Claim for Wrongful Acts" under the Policy and "the November 2023 Email and the FAC in the *Lively* lawsuit are Related Claims under the Policy" because they are "based upon, arising from or are logically or causally connected by the same, or any related or common, or a series of related or common, facts, circumstances, transactions or Wrongful Acts." However, courts have repeatedly recognized that an overlap of some facts does not make claims "related," "interrelated," or the "same claim."

In *Bay Cities Paving & Grading, Inc. v. Lawyers Mutual Insurance Co.*, 5 Cal. 4th 854 (1993), the California Supreme Court addressed when claims are "related" because of one common element:

> We do not suggest, however, that, in determining the amount of coverage, the term "related" would encompass every conceivable logical relationship. At some point, a relationship between two claims, though perhaps "logical," might be so attenuated or unusual that an objectively reasonable insured could not have expected they would be treated as a single claim under the policy. In the present case, there is no attenuation or surprise to the insured. The two errors by the attorney are "related" in multiple respects. They arose out of the same specific transaction, the collection of a single debt. They arose as to the same client. They were committed by the same attorney. They resulted in the same injury, loss of the debt.

*Id.* at 873.

Many other courts have reached similar conclusions. For example, In *National Amusements, Inc. v. Endurance American Specialty Insurance Co.,* No. N22C-06-018-SKR CCLD, 2025 WL 720455 (Del. Super. Ct. Feb. 17, 2025), a Delaware Superior Court concluded that a 2019 securities class action challenging the fairness of shareholder compensation in a merger was not "interrelated" with four 2016 lawsuits alleging acts that improperly led to a merger. The court applied the "meaningful linkage" test, relying on *Alexion*. *Id.* at *8. It stated that "the primary factor which determines whether two claims are meaningfully linked[] is if they 'involve the same conduct.'" *Id.* (quoting *In re Alexion Pharms., Inc. Ins. Appeals*, No. 154, 2024, 2025 WL 383805, at *7 (Del. Feb. 4, 2025)). The court further explained "it is not enough for the two claims to mention some of the same facts." *Id.* (quoting *Options Clearing Corp. v. U.S. Specialty Ins. Co.*, No.

CVN20C11001AMLCCLD, 2021 WL 5577251, at *8 (Del. Super. Ct. Nov. 30, 2021)). The court also pointed to earlier decisions saying that courts are to implement the "meaningful linkage" standard "where possible, to find coverage." *Id.* (quoting *Options Clearing*, 2021 WL 5577251, at *8). The court noted that the complaints in the 2019 class action and the 2016 lawsuits "seem to suggest" that the lawsuits are interrelated, noting that both assert claims for breach of fiduciary duty against the relevant corporate controllers. *Id.* at *9. But it found "that the suits challenge distinct wrongful acts and involve different legal theories." *Id.* Therefore, the court held that "the most important meaningful linkage factor supports finding that the two suits are not related." *Id.* The court further noted that the other factors were neutral (the involvement of the same parties—some overlap, "but a critical defendant in one was not named in the other"), slightly favored no meaningful linkage (common acts—a 2019 merger versus 2016 decisions, but with references in the 2019 class action to prior acts), and no meaningful linkage (the two suits involving mostly distinct "pools of evidence" and different damages sought). *Id.* at *9-10. The court also held that a Prior Notice exclusion did not bar coverage because, like "interrelatedness," "it also requires a 'meaningful linkage' between the noticed litigation and the suit at issue," which did not exist. *Id.* at *11-12; *see also Continental Cas. Co. v. AWP USA Inc.*, 2021 WL 1225968, at *14 (E.D. Va. Mar. 31, 2021) (rejecting insurer's "interrelated" defense when "Claims involved . . . (1) different AGA partners; (2) different websites through which insurance was sold; (3) different named plaintiffs; (3) different putative classes; (4) different factual and legal claims; (5) different damages; and, (6) different state laws"); *Glascoff v. OneBeacon Midwest Ins. Co.*, 2014 WL 1876984, at *7 (S.D.N.Y. May 7, 2014) (rejecting argument that "two Claims are Interrelated Wrongful Acts because 'both feature allegations of *similar* conduct against Plaintiffs'").

In light of these governing principles, the November 2023 Email and the *Lively* lawsuit are not Related Claims. They do not arise out of the same transaction or contract, the parties are different, the theories of liability are different, the alleged wrongs are different, the injuries are different, the governing laws and regulations are different, and the evidence related to the claims is different. This is particularly evidenced by the fact that the alleged conduct that forms the basis of the Retaliation, False Light Invasion of Privacy, and Defamation claims asserted in the Lawsuit did not even exist at the time of the November 2023 Email.

Moreover, even if Harco's "Related Claim" defense had any merit, that would still not deprive the Insureds of coverage because, as your letters admit, coverage would be afforded under the prior 2023-24 policy period. The Policy states that "[t]he Insurer may assert that a notice of a Claim is not as soon as practicable only if the Insurer has been materially prejudiced by such late notice." Policy § VI.1; *see also Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 101 (2019) ("California's notice-prejudice rule requires an insurer to prove that the insured's late notice of a

claim has substantially prejudiced its ability to investigate and negotiate payment for the insured's claim"). Harco has not established, and cannot establish, prejudice because of when it formally received notice of the *Lively* lawsuit—which has been widely publicized since its inception—shortly after it was filed.

### **Harco's Manufactured Application Disclosure Defense Also Fails**

Harco further contends that coverage is barred because Wayfarer failed to disclose certain alleged "HR Complaints" during pre-production and on the set of *It Ends With Us* in the 2023 EPL Warranty Letter. Harco also says that Wayfarer failed to disclose the November 2023 Email in its 2024 Application for the Policy. This position is likewise meritless.

There was no material misrepresentation and Harco cannot meet its burden of proving otherwise. *See Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 916 (1973). Materiality is determined by the reasonable and probable effect truthful answers would have had on the insurer's willingness to issue the policy. *Id.*; Cal. Ins. Code §§ 334 & 360. An incorrect answer on an application provides no ground for rescission when the true facts, if known, would have made the contract no less desirable to the insurer. *Thompson*, 9 Cal. 3d at 916-17. Harco provides no basis to show that it would not have issued the Policies had Wayfarer disclosed the alleged "HR Complaints" and the November 2023 Email.

Moreover, an applicant's failure to appreciate the significance of questions that were answered incompletely or incorrectly does not constitute a material misrepresentation. *Id.* at 916. "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879 (2001). Thus, even if Wayfarer failed to appreciate the significance of the question regarding affiliation, that failure presents no ground for rescission.

Even if Harco believes that Wayfarer somehow should have known that Ms. Lively's employment-related allegations could lead to the future claims asserted in the *Lively* lawsuit, including the Retaliation, False Light Invasion of Privacy, and Defamation claims that are based on conduct that occurred after the Application was submitted, any such possible awareness does not mean that the claims are "known" or "material." *Washington Sports & Entertainment, Inc. v. United Coastal Insurance Co.*, 7 F. Supp. 2d 1 (D.D.C. 1998), is analogous.

In *Washington*, the insured had been sued for by plaintiffs alleging violations of the Americans with Disabilities Act. The insurer argued that the insureds knew about the risk of litigation before completing an application for coverage. The application asked, like most applications, whether the insureds knew about any error, omission, or other circumstances that could be the basis for a claim under the

policy. They answered "no." However, the insured already had engaged in discussions with the Justice Department in which the Department said that the insured had violated the Act. The insurer said that these discussions mean that there was a "known" risk that should have been disclosed and that its policy should not cover the lawsuit. The court noted that the answer "may appear troubling under the floodlamp of hindsight," but rejected the insurer's argument:

> [The insureds] may have feared a potential suit, but this concern alone does not convert [the answer in the application] into a material misrepresentation. [The insureds] were obviously wary of a host of circumstances that could be a basis for a claim under the policy . . . . Indeed, no one buys insurance unless he is concerned about risks; [the insureds] must have had some concerns, or they would not have paid $500,000 for their insurance. However, there is no evidence that [the insureds] had any knowledge that one of these manifold risks was on the verge of occurrence.

*Id*. at 30. If discussions with the Justice Department in Washington did not suffice to constitute knowledge of an error, omission or other circumstance that could be a basis of a claim by the Justice Department, an allegation here in earlier communications alleging employment violations does not make later retaliation, false light invasion of privacy, defamation, and other claims known to the Insureds. Any contrary conclusion would deprive the Insureds of the promised insurance.

### Harco's Other Defenses Do Not Excuse Harco's Duties

Because the Harco Policy is a duty-to-defend policy that grants broad coverage whenever "any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim *potentially* covered by the policy," *Scottsdale*, 36 Cal. 4th at 655, Harco's defenses based on the PR Defendants not qualifying and limitations on Covered Defense Costs fail. As noted above, any late notice defense requires Harco show material prejudice, which Harco has not done and cannot do. *See* Policy § VI.1. (insurer can assert late defense only "if the Insurer has been materially prejudiced by such late notice"); *Pitzer*, 8 Cal. 5th at 101.

Harco's defense based on California Insurance Code section 533 also does not help Harco because the *Lively* lawsuit asserts several causes of action, including for Failure to Investigate, Prevent, and/or Remedy Harassment in violation of FEHA, Breach of Contract, False Light Invasion of Privacy, Retaliation, and Defamation, that do not require willful conduct. Furthermore, because any liability that Wayfarer might have would be on a vicarious basis, section 533 and any related

Evan Shapiro, Esq.
July 22, 2025
Page 9

policy exclusions do not excuse Harco from its duties.  *See, e.g., Lisa M. v. Henry Mayo Newhall Mem'l Hosp.,* 12 Cal. 4th 291, 305 n.9 (1995) ("Neither Insurance Code section 533 nor related policy exclusions for intentionally caused injury or damage preclude a California insurer from indemnifying an employer held vicariously liable for an employee's willful acts."); *Arenson v. Nat'l Auto. & Cas. Ins. Co.,* 45 Cal. 2d 81, 84 (1955) (exclusion for injury "caused intentionally by or at the direction of the insured" does not bar coverage for parent's vicarious liability from injuries willfully caused by additional-insured child).

Harco's assertion of the Conduct exclusion clearly has no application either because it requires the gaining of profit or advantage, the commission of deliberate criminal, fraudulent, dishonest conduct, or willful violation be "established by a final non-appealable adjudication in the underlying proceeding and not in a proceeding by or against the Insurer."  No such "final non-appealable adjudication" has been reached and it may never be.

The Discrimination/Harassment exclusion likewise does not relieve Harco's duty to defend because the *Lively* lawsuit contains several causes of action that do not allege "discrimination against, or harassment of, a third party by an Insured," including, among others, the causes of action for Retaliation, False Light Invasion of Privacy, Defamation.

These causes of action and others also do not fall within the Contractual Liability exclusion which explicitly "does not include liability that would be imposed upon the Insured in the absence of such contract or agreement."  The Employment Related Matter exclusion is also inapplicable on its face because it "does not apply to any Claim (other than a Claim for Wage and Hour Matters) against an Insured Person."

Similarly, the Professional Services exclusion does not apply because none of the allegations in the *Lively* complaint, including the alleged "press and digital plan," relate to "performance of, or failure to perform . . . services for others for a fee or other remuneration" or "services that may be legally performed only by an individual holding a professional license, regardless of whether the person is licensed or not."  The *Lively* lawsuit contains various causes of action and allegations that do not concern any "Bodily Injury" whatsoever so the Bodily Injury exclusion does not bar coverage, either.  The Insured vs. Insured Exclusion does not bar coverage because it is undisputed that Ms. Lively is not, at the very least, an employee of Wayfarer or of any of the individual Insureds named as defendants in the *Lively* lawsuit.

Lastly, the *Lively* lawsuit does not allege any "violation of any federal, state, local or foreign law or common law which prohibits unfair or deceptive trade or

business practices," so the Unfair Trade Practices Exclusion plainly has no application either.

      The Policy's indemnification and allocation provisions likewise do nothing to obviate Harco's clear and express duty to defend. Harco's "Other Insurance" defense also fails because those clauses apply only between insurers and do not limit the Insureds' rights to coverage. "As a general rule, insurance policies should be interpreted as if no other insurance is available." *Armstrong World Indus. Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 78 n.13 (1996) (each insurer has a separate and independent duty to respond "in full" to a claim); *see also State of California v. Cont'l Ins. Co.*, 15 Cal. App. 5th 1017, 1032 (2017) ("other-insurance clauses are intended to apply in contribution actions between insurers, not in coverage litigation between insurer and insured"); *Centennial Ins. Co. v. United States Fire Ins. Co.*, 88 Cal. App. 4th 105, 115 (2001) ("insurers must respond in full to a contractual policyholder's tender"; right to seek contribution from other insurers is "entirely separate from their obligations to their insured").

* * * * *

      Based on the foregoing, the Insureds demand that Harco withdraw its coverage denial and agree to pay the Insureds for all fees and costs incurred in their defense to date and agree to pay for their defense hereafter. Meanwhile, the Insureds continue to reserve all rights.

Sincerely,

Aleksandra Kaplun, Esq.

cc:    Sarah F. Voutyras (svoutyras@skarzynski.com)
       Kirk Pasich, Esq. (kpasich@mcguirewoods.com)
       Mitra Ahouraian, Esq. (mitra@ahouraianlaw.com)