UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                              :

HARCO NATIONAL INSURANCE COMPANY,    :
                              :

          Plaintiff,          :

                              :

     -v-                   :

                              :

WAYFARER STUDIOS LLC, et al.,        :

                              :

         Defendants.        :

                              :
------------------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 07/14/2026 |

25-cv-5949 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants Wayfarer Studios LLC ("Wayfarer"), It Ends With Us Movie LLC ("IEWUM"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath") and Steve Sarowitz ("Sarowitz") (collectively, "Defendants" or the "Insured") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint against them or, in the alternative, to stay this action according to the Court's discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and the *Wilton*/*Brillhart* doctrine. Dkt. No. 14. For the following reasons, the motion to dismiss or stay the case is denied.

## BACKGROUND

This case arises out of the by now well-publicized dispute between the actors Blake Lively and Justin Baldoni regarding the shooting of the film *It Ends With Us* (the "Film") and the publicity campaign that followed it. On December 31, 2024, Lively filed a lawsuit in this Court alleging that Baldoni and his producer Jamey Heath ("Heath") sexually harassed her on the set of the Film and then engaged in a publicity campaign to retaliate against her for having complained about her treatment and to prevent her from publicly disclosing that treatment. *See Lively v. Wayfarer Studios LLC*, 24-cv-10049 (S.D.N.Y. filed Dec. 31, 2024) (the "Lively Action").

Lively also sued IEWUM and Wayfarer, which produced the Film, and Sarowitz, who was the co-founder, co-chairman, and leading financier of Wayfarer. Lively Action, Dkt. No. 1 ¶ 8. On May 7, 2026, Lively dismissed the Lively Action after reaching a settlement with Defendants. Lively Action, Dkt. Nos. 1433–34. This case relates to the insurance coverage for the defense by Defendants of the Lively Action.

Plaintiff Harco Insurance Company ("Harco") is an insurance company based in North Carolina. Dkt. No. 1 (the "Complaint" or "Compl.") ¶ 8. It agreed to provide insurance coverage to Wayfarer as Named Insured and the other Defendants as employees thereof pursuant to two separate Management Liability Policies issued to Wayfarer. *Id.* ¶ 1. One of the policies at issue was effective from July 15, 2023 to July 15, 2024 (the "2023 Policy") and the other was effective from July 15, 2024 to July 15, 2025 (the "2024 Policy"). *Id.* ¶¶ 46–47. Each of the Policies provides insurance coverage including Directors and Officers Liability ("D&O") and Employment Practices Liability ("EPL"). *Id.* ¶ 47.

On or about December 20, 2024, Lively filed an administrative complaint with the California Civil Rights Department in which she alleged that she was the victim of sexual harassment during production of the Film and of subsequent retaliation to prevent her from speaking out about such harassment. *Id.* ¶ 29. On December 31, 2024, Lively filed the Lively Action in this Court. *Id.* ¶ 29. A first amended complaint (the "FAC") was filed on February 18, 2025. *Id.* ¶ 31.

Defendants gave Harco notice of the Lively Action by email on April 25, 2025, and demanded that Harco provide them with a defense and indemnity in the Lively Action pursuant to the terms of the 2024 Policy. *Id.* ¶¶ 7, 40. By letter dated June 20, 2025, Harco denied coverage to Defendants under the 2024 Policy. *Id.* ¶¶ 7, 41. Defendants replied by email on

June 20, 2025 that they believed that Harco's position was wrong and should be withdrawn, and additionally requested a more detailed explanation of all additional potentially relevant terms, conditions, and limitations of the Policies within Harco's knowledge and with respect to which Harco reserved its rights. *Id.* ¶ 43. By letter of June 26, 2025, Harco provided Wayfarer with a further explanation of additional terms, conditions, limitations, and exclusion of the Policies which it believed might apply to limit coverage for the Lively Action. *Id.* ¶ 44.

Harco's coverage position is based, at least in part, on a warranty signed by Wayfarer and included as part of the 2023 Policy (the "2023 Warranty"). Wayfarer warranted that "[n]o person or entity for whom this insurance is intended has any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a claim which may fall within the scope of the Proposed Insurance detailed above." *Id.* ¶ 60; *see* Dkt. No. 1-2. That warranty is deemed part of the policy and includes the following language in all capital letters: "IT IS AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM ARISING THEREFROM (WHETHER OR NOT DISCLOSED HEREIN), IN ADDITION TO ANY OTHER REMEDY THE INSURER MAY HAVE, IS EXCLUDED FROM THE PROPOSED COVERAGE." Compl. ¶ 60; Dkt. No. 1-2. Harco's coverage position was also based, at least in part, on the language of the 2024 Policy. When Wayfarer applied for renewal of the 2023 Policy, it submitted a renewal application (the "2024 Renewal Application"). Compl. ¶ 6. The 2024 Renewal Application advised in all capital letters that Harco "WILL NOT PROVIDE COVERAGE FOR CLAIMS OR INCIDENTS WHICH THE APPLICANT IS AWARE OF PRIOR TO THE INCEPTION DATE OF ANY COVERAGE THAT IS OFFERED AND ACCEPTED." Dkt. No. 1-3.

In response to Defendants' notice of claim, Harco has taken the position that it is not

obligated to provide coverage for the Lively Action because Defendants had knowledge of the acts and omissions giving rise to the claims that comprise that action.  In the FAC in the Lively Action, Lively alleges that (i) Heath orally acknowledged before the first day of shooting in May 2023 that a HR report had been submitted, (ii) Baldoni acknowledged that comments he made to Lively appeared to offend her, and (iii) Baldoni acknowledged in an email dated June 1, 2023, that a HR complaint had been filed by another female actor on the Film.  Compl. ¶ 21.  Harco also points to an email sent by Lively's lawyers on November 9, 2023 to Defendants' lawyers setting forth Lively's demands for returning to the set after production of the Film had ceased due to the SAG-AFTRA guild strike (the "November 2023 Demand").  *Id.* ¶ 23.  The November 2023 Demand relayed Lively's complaint about her treatment on the set and contained a reservation of rights.  *Id.*  According to Harco, while those communications and, in particular, the November 2023 Demand, put Defendants on notice of Lively's claims, they were not made known to Harco in accordance with the 2023 Policy.  *Id.* ¶ 41.  Harco also has taken the position that the Lively Action and the November 2023 Demand are "Related Claims" as defined in the Policies and thus they are deemed to be a single Claim first made during the 2023 Policy and not a claim first made during the 2024 Policy Period, giving rise to coverage under the 2024 Policy. *Id.*

As of the date of the filing of this lawsuit on July 21, 2025, Defendants had not responded substantively to Harco's stated position on the scope of its coverage.  *Id.* ¶ 44.

IEWUM also holds insurance issued by New York Marine and General Insurance Company ("New York Marine") and QBE Insurance Corporation ("QBE"), Dkt. No. 16-2 ¶¶ 23, 34, and Wayfarer is the named insured under a policy issued by Certain Underwriters at Lloyd's and Other Insurers Subscribing to Policy Number ESN0140179884 (the "Underwriters"), *id.* ¶

4

51.  Although IEWUM is the named insured under the policies issued by New York Marine and QBE and Wayfarer is the named insured under the policies issued by the Underwriters, each of those policies also covers the other Defendants.  *Id.* ¶¶ 23, 35, 51.  Specifically, New York Marine issued three Commercial General Liability Coverage insurance policies to IEWUM, covering the policy periods February 21, 2023 to May 30, 2024, May 30, 2024 to August 31, 2024, and August 31, 2024 to August 31, 2025.  Dkt. No. 16-2 ¶ 23.  QBE issued an insurance policy to IEWUM with a policy period of May 9, 2023 to May 9, 2026.  *Id.* ¶ 34.  And the Underwriters issued a policy (the "Lloyd's Policy") to Wayfarer with a policy period of December 6, 2024 to December 6, 2025.  *Id.* ¶ 51.

On April 29, 2025, Defendants formally notified each of New York Marine, QBE, and the Underwriters of the Lively Action, *id.* ¶¶ 29, 46, 59, but each of New York Marine, QBE, and the Underwriters have denied coverage for the Lively Action.  New York Marine denied coverage of the Lively Action on May 15, 2025.  *Id.* ¶ 30.  QBE denied coverage of the Lively Action on May 29, 2025.  *Id.* ¶ 48.  The Underwriters disclaimed coverage on June 12, 2025.  *Id.* ¶ 60.

On July 30, 2025, Defendants filed an action in the Superior Court for the State of California, Los Angeles County, against New York Marine, QBE, and the Underwriters alleging that those insurers breached their respective contracts with IEWUM and Wayfarer, as the case may be, by denying and disclaiming coverage and refusing to defend Defendants in the Lively Action (the "California Action").  *Id.* ¶¶ 64–72.  Plaintiffs further seek compensatory and punitive damages against each of the insurers for bad faith refusal to investigate the Defendants' claims for coverage and refusal to honor their obligations as insurers.  *Id.* ¶¶ 73–99.  Finally, Defendants seek a declaratory judgment that each of New York Marine, QBE, and the

5

Underwriters owe them a duty to defend in connection with the Lively Action.  *Id.* ¶¶ 100–120.

## PROCEDURAL HISTORY

Plaintiff initiated this proceeding by complaint on July 21, 2025.  Dkt. No. 1.  On October 24, 2025, Defendants filed this motion to dismiss or for a stay.  Dkt. No. 14.  Defendants also filed a memorandum of law and a declaration of counsel in support of the motion to dismiss.  Dkt. Nos. 15–16.  On November 21, 2025, Plaintiff filed a memorandum of law in opposition to the motion to dismiss or for a stay along with the declaration of counsel and exhibits.  Dkt. No. 25.  Defendants filed a reply memorandum of law on December 12, 2025.  Dkt. No. 26.  On December 22, 2025, Plaintiff filed a letter motion for leave to file a sur-reply, Dkt. No. 27, and on December 29, 2025, Defendants filed a letter in opposition to the motion for leave to file a sur-reply, Dkt. No. 28.

## DISCUSSION

Defendants argue that the complaint should be dismissed or, in the alternative, that this case should be stayed pursuant to the *Brillhart*/*Wilton* doctrine.  *See Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  They argue that the California Action raises issues that overlap with the issues in this case, that Harco would have been sued by Defendants in California had it not first filed suit against Defendants in this action, and that resolution of the similar issues in the two different fora would waste judicial resources, prejudice Defendants by forcing them to litigate similar issues in two separate jurisdictions, and risk inconsistent results.  Dkt. No. 15 at 1–2.

The Declaratory Judgment Act ("DJA"), pursuant to which this action was filed, "creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (quoting *United*

*States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986)).  The Court has jurisdiction under the DJA if there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The DJA "creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it." *Doherty*, 786 F.2d at 498–499 (quoting C. Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983)).  "The fundamental purpose of the DJA is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp., Inc.*, 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003) (quoting *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963)); *see In re Combustion Equip. Assocs., Inc.*, 838 F.2d 35, 37 (2d Cir. 1988) ("The purpose of the Act is to enable parties to adjudicate disputes before either side suffers great damage.").

"[C]laims arising under insurance contracts where all the damages have not yet accrued are often an appropriate subject of declaratory judgment actions." *Starr Indem. & Liab. Co. v. Exist, Inc.*, 2023 WL 4029821, at *4 (S.D.N.Y. June 14, 2023); *see also id.* ("it is common for the court to entertain a declaratory judgment action where the insurer disputes the duty to defend and indemnify its insured"); 14A Couch on Ins. § 202:3 ("In case of doubt or a dispute as to whether there is a duty to defend, based on a dispute over whether an insurance policy affords coverage for the conduct alleged in the complaint against the insured, a declaratory judgment action or motion may be brought to make the determination.").

7

The district court exercises equitable jurisdiction under the DJA and thus the obligation to hear a DJA action is permissive, not obligatory. *See Catlin Ins. Co. v. Champ Constr. Co.*, 2025 WL 2494291, at \*8 (S.D.N.Y. Aug. 29, 2025). "[A] district court is authorized in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment." *Wilton*, 515 U.S. at 288. The Second Circuit has held that a district court considering whether to abstain from issuing declaratory judgment should consider the following six factors "to the extent they are relevant in a particular case":

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; ... and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co.*, 57 F.4th at 99–100; *see also Starr Indem. & Liab. Co. v. Exist, Inc.*, 2024 WL 503729, at \*2 (2d Cir. Feb. 9, 2024) (summary order) (holding that district court need not consider all of the *Admiral* factors where the omitted factors were "either irrelevant or deserve[d] less than 'significant weight.'").

Abstention under *Wilton* is "premised on the notion that a federal court should refrain from issuing declaratory judgments on issues that can better be settled in [a] proceeding pending in the state court." *Freeman v. Giuliani*, 2024 WL 5239410, at \*12 (S.D.N.Y. Dec. 27, 2024) (quoting *Stoncor Grp. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 514 (S.D.N.Y. 2018)). This is most often the case "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 104 (2d Cir. 2012) (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). "But 'courts in this District considering requests for

*Wilton* abstention routinely ask not only whether the parties and issues are the same but also whether the scope of the related proceeding is equivalent, whether the claims of the parties to the declaratory judgment action can be satisfactorily adjudicated in that action, and whether such parties are amenable to process in that proceeding.'" *Catlin Ins. Co.*, 2025 WL 2494291, at *8 (quoting *Freeman*, 2024 WL 5239410, at *13).

There is no basis for abstention under the *Brillhart/Wilton* doctrine here.  The first two *Admiral* factors weigh heavily in favor of the exercise of jurisdiction.  The declaratory judgment that Harco seeks will serve a useful purpose in clarifying and settling the legal issues involved and would both finalize the controversy and provide relief from uncertainty.  At the time that this lawsuit was filed and that Defendants' motion was made, there was an ongoing dispute between Lively and Defendants.  Lively had sued Defendants, Defendants were incurring defense costs, and Defendants had made claims against Harco for coverage.  Plaintiff did not seek to avoid liability for "'already accrued claims,'" *see Allied World Surplus Lines Ins. Co. v. Elamex USA, Corp.*, 2024 WL 2212948, at *6 (S.D.N.Y. May 16, 2024) (quoting *Starr Indemnity*, 2023 WL 4029821, at *5)), but rather "to quiet a claim creating uncertainty when the party with that potential claim fail[ed] to assert it." *Id.* at *5.  A judgment in this case would settle the issues between the parties. *See Mt. Hawley Ins. Co. v. Buckeye Real Est. Invs. LLC*, 2024 WL 323334, at *5 (S.D.N.Y. Jan. 29, 2024), *vacated on other grounds*, 2024 WL 3523051 (S.D.N.Y. July 23, 2024) ("The question regarding Plaintiff's duty gives rise to this action, and a declaratory judgment will afford relief from uncertainty over that question; therefore, this Court will exercise its discretion to preside over this action.").

On the third *Admiral* factor, there is no reason to believe that Harco filed this action as part of a race to the courthouse or for purposes of procedural fencing.  At the time that this

9

lawsuit was filed, a month had passed from the date on which Harco had informed Defendants of its coverage position. Compl. ¶ 7. Defendants disputed that position but had not responded substantively to Harco. *Id.* ¶ 44. For nearly a month after Harco had engaged with Defendants, they did not engage with Harco. All the while, defense costs were piling up for which if there was coverage, Harco would have been liable. Harco had every reason to file this action to clarify whether it had a duty to defend or indemnify Defendants. *See Mt. Hawley Ins. Co.*, 2024 WL 323334, at *5. In addition, the plaintiff in the underlying action would "benefit from knowing who exactly [wa]s financially liable if she prevail[ed]." *Id.* Moreover, that Harco filed its suit in this Court does not evince a bad-faith motive. The Lively Action was pending here and, by filing a parallel action against Lively, Defendants themselves had affirmatively subjected themselves to the jurisdiction of this Court with respect to the controversy at issue. With knowledge of the allegations of the Lively Action, this Court would logically have been deemed best suited to resolve the insurance dispute between Harco and Defendants.

The fourth *Admiral* factor instructs courts to consider whether retaining jurisdiction over the dispute "would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court." *Admiral Ins. Co.*, 57 F.4th at 99–100. That factor, along with the fifth factor of whether there is a better or more efficient remedy and the sixth factor which addresses concerns for judicial efficiency, are most salient whether there is currently pending in state court a proceeding involving the same issues. The courts have expressed concern that the exercise of declaratory judgment jurisdiction when there exists a state court action between the parties or their privies "would risk duplicative or contradictory fact finding." *Lafarge Canada Inc. v. Am. Home Assurance Co.*, 2018 WL 1634135, at *9 (S.D.N.Y. Mar. 31, 2018). "[T]he Supreme Court has cautioned that 'ordinarily it would be uneconomical as well as

10

vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*, 2004 WL 193564, at \*2 (S.D.N.Y. Feb. 3, 2004) (quoting *Brillhart*, 316 U.S. at 495).  At the same time, however, "it is not 'the law that a federal court must decline to entertain a declaratory judgment action because a declaratory remedy may exist in the state court.'" *Freeman*, 2024 WL 5239410, at \*14 (quoting *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 738 (2d Cir. 1992)); *see also* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

There is little to no risk of friction between the federal court and state courts because Defendants have not sued Harco in state court and there is no currently pending litigation between the parties or involving the Policies in state court.  Defendants put great weight on the fact that, after they were sued in this action, they filed the California Action and that they could add Harco to that action.  Dkt. No. 15 at 9–10.  But that Defendants could or would add Harco as a defendant to the California Action if the Court dismisses this action does not mean that this Court would create friction with the California court if it does not dismiss the case and instead exercises jurisdiction.  With neither Harco nor its privies as parties to the California case, there is no risk that the California court would reach a decision as to Harco's liability to Defendants that would conflict with a decision by this Court on that issue.  It is not clear, in fact, how it could reach any conflicting conclusions, where the insurance policies at issue in the California Action differ in temporal and substantive scope from those at issue here.  *See* Dkt. No. 25 at 10–11 (detailing key differences in the coverage at issue in the California Action versus the Policies here).

Defendants' argument thus comes down to the notion that this Court should decline to exercise jurisdiction because a California state court could resolve the issues between the parties and it would be efficient for it to do so.  But those are not sufficient reasons under *Brillhart*/*Wilton* for the Court to decline to exercise jurisdiction.  Harco has not been sued in California state court and that court thus has invested no resources in determining the liability issues between the parties.  The Defendants have, in related litigation, submitted to the jurisdiction of this Court.  This Court has developed knowledge with respect to the underlying issues in the Lively Action.  And there is no reason to believe that the Court could not apply California law to the relatively uncomplicated issues presented here.  *Freeman*, 2024 WL 5239410, at \*15 ("This Court has the same obligation to apply Florida law as a court in Florida," and "[t]here is no reason to believe that this Court would be any less faithful to those values than a court sitting in Tallahassee, Miami, or the Florida Keys.").[1]  Under these circumstances, it would undermine judicial efficiency for the Court to decline to exercise jurisdiction and to force a California court to consider a case which has not yet been filed before it.

The remainder of Defendants' arguments are not persuasive.  They argue that "New York federal courts have stated that 'insurance disputes . . . generally present strong reasons for a federal court to abstain because such claims are intimately tied to matters of state law which are to be litigated in state court.'"  Dkt. No. 15 at 7 (quoting *TIG Ins. Co. v. Fairchild Corp.*, 2008 WL 2198087, at \*3 (S.D.N.Y. May 27, 2008)).  The case does not support the proposition for

---

[1] Defendants' argument that because California law applies this Court should abstain similarly misses the mark.  Dkt. No. 15 at 8.  For that proposition, they cite cases that concern not abstention but general choice-of-law principles.  *See id.* (citing *Intercontinental Plan, Ltd. v. Daystrom, Inc.*, 248 N.E.2d 576, 582 (N.Y. 1969) and *Wm. Passalacqua Buliders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991)).  But that the Court would apply California law to the dispute does not, as discussed, pose any particular concern under *Brillhart*/*Wilton* doctrine.

which Defendants cite it.  Defendants omit from their citation the court's statement clarifying that its reasoning pertains only to insurance disputes "such as the present case," where there existed "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues." *TIG Ins. Co.*, 2008 WL 2198087, at *3.  Thus, *TIG* does not support Defendants' argument.  That a court might be willing to abstain from deciding a dispute when there is already a case pending involving the exact same parties and issues does not mean that the Court should decline to hear this case where the California Action involves neither the same parties or Policies.  *See also Travelers Indem. Co.*, 2004 WL 193564, at *2 (abstaining where the "action before this court and the Illinois action are parallel").  This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, and Defendants have not challenged diversity jurisdiction as appropriate.  *See Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 475 (S.D.N.Y. 2017) ("The very existence of diversity jurisdiction severely undermines any argument that federal courts should decline to hear declaratory judgment claims between diverse parties merely because state-law questions are in issue.").

 Nor is it true, as Defendants appear to posit, that the convenience of the parties or witnesses alone counsels in favor of abstention.  Dkt. No. 15 at 9.  First, it is not clear that factor favors Defendants—Harco is incorporated and has its primary place of business in North Carolina, and many witnesses are present in New York rather than in California.  *See* Dkt. No. 25 at 18.  Second, Defendants' arguments sound more in frustration that Plaintiff has chosen to bring its lawsuit in this district rather than in California.  But Defendants do not challenge either venue or personal jurisdiction in their motion to dismiss.  "*Wilton*'s purpose is to discourage a federal declaratory judgment from interfering with a current or perhaps potential and imminent

state proceeding," and "has no bearing on the transfer of a venue." *Freeman*, 2024 WL 5239410, at *15.

## CONCLUSION

The motion to dismiss or in the alternative to stay the proceeding is DENIED.  The Clerk of Court is respectfully directed to close Dkt. Nos. 14 and 27.


SO ORDERED.

Dated: July 14, 2026
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

14