UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARCO NATIONAL INSURANCE COMPANY,

Plaintiff,

v.

WAYFARER STUDIOS LLC, *et al.*,

Defendants.

Civil Action No.: 1:25-cv-5949-LJL

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendants WAYFARER STUDIOS LLC, IT ENDS WITH US MOVIE LLC, JUSTIN BALDONI, JAMEY HEATH, and STEVE SAROWITZ (collectively, the "Insureds"), by and through their undersigned counsel, file their Answer, Affirmative Defenses, and Counterclaims[1] to the Amended Complaint filed by plaintiff Harco National Insurance Company ("Harco"), and allege as follows:

**NATURE OF THE ACTION**

1. Answering paragraph 1 of the Amended Complaint, the Insureds state that this paragraph characterizes the nature of Harco's claims, to which no response is required. To the extent a response is required, the Insureds deny the allegations in this paragraph.

2. Answering paragraph 2 of the Amended Complaint, the Insureds admit that *Lively v. Wayfarer Studios,* Case No. 1:24-cv-10049-LJL (the "*Lively* lawsuit"), has been settled without Ms. Lively recovering, and the Insureds not paying, any damages on the causes of action asserted in the *Lively* lawsuit and that the Insureds therefore are not seeking indemnification from Harco as

[1] The Insureds deny all allegations in the Amended Complaint not specifically admitted. In responding to the Amended Complaint, the Insureds use the headings and subheadings employed by Harco strictly as a convenience to the Court and do not admit any allegation made, or inference suggested by, such headings or subheadings, and specifically deny any allegation made, or inference suggested by, such headings and subheadings.

to damages that Ms. Lively sought against them in her complaints in the *Lively* lawsuit. The Insureds deny the remaining allegations in paragraph 2 of the Amended Complaint.

3. Answering paragraph 3 of the Amended Complaint, the Insureds admit that Ms. Lively's complaint included, among many other allegations, allegations of sexual harassment and retaliation. The Insureds deny the remaining allegations in paragraph 3 of the Amended Complaint.

4. Answering paragraph 4 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

5. Answering paragraph 5 of the Amended Complaint, the Insureds state that this paragraph contains legal conclusions to which no response is required. To the extent that a response is required, the Insureds deny the allegations in this paragraph.

6. Answering paragraph 6 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

7. Answering paragraph 7 of the Amended Complaint, the Insureds admit the 2024 Renewal Application contains the quoted language in this paragraph. The Insureds deny the remaining allegations in paragraph 7 of the Amended Complaint.

8. Answering paragraph 8 of the Amended Complaint, the Insureds admit that on April 25, 2025, the Insureds formally notified Harco of the *Lively* lawsuit and demanded that Harco provide them with a defense and indemnity in the *Lively* lawsuit pursuant to the terms of the 2024 Policy. The Insureds also admit that in a June 20, 2025 letter, Harco stated that there is no coverage for the *Lively* lawsuit under the 2023 and 2024 Policies, and the Insureds responded that they disagreed with Harco's coverage position. The Insureds deny the remaining allegations in paragraph 8 of the Amended Complaint.

9. Answering paragraph 9 of the Amended Complaint, the Insureds admit that there is an actual controversy between the parties regarding coverage under the Policies, but deny that Harco has reasonable grounds to genuinely dispute coverage or its duty to defend.

**THE PARTIES**

10. Answering paragraph 10 of the Amended Complaint, the Insureds lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

11. Answering paragraph 11 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

12. Answering paragraph 12 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

13. Answering paragraph 13 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

14. Answering paragraph 14 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

15. Answering paragraph 15 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

16. Answering paragraph 16 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

**JURISDICTION AND VENUE**

17. Answering paragraph 17 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

18. Answering paragraph 18 of the Amended Complaint, the Insureds state that this paragraph contains legal conclusions to which no response is required. To the extent that a response is required, the Insureds deny the allegations in this paragraph.

19. Answering paragraph 19 of the Amended Complaint, the Insureds state that this paragraph contains legal conclusions to which no response is required. To the extent that a response is required, the Insureds deny the allegations in this paragraph.

## FACTUAL BACKGROUND

### *A. The Underlying Action*

20. Answering paragraph 20 of the Amended Complaint, the Insureds admit that the *Lively* lawsuit is assigned Case No. 1:24-cv-10049-LJL. Except as expressly admitted, the Insureds deny the allegations in paragraph 20 of the Amended Complaint.

21. Answering paragraph 21 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

22. Answering paragraph 22 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

23. Answering paragraph 23 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

24. Answering paragraph 24 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

25. Answering paragraph 25 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

26. Answering paragraph 26 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

27. Answering paragraph 27 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

28. Answering paragraph 28 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

29. Answering paragraph 29 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

30. Answering paragraph 30 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

31. Answering paragraph 31 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

32. Answering paragraph 32 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

33. Answering paragraph 33 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

34. Answering paragraph 34 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

35. Answering paragraph 35 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

*B. The Wayfarer Defendants Retain Counsel and File Answers in the Underlying Action*

36. Answering paragraph 36 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

37. Answering paragraph 37 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

*C. The Wayfarer Action*

38. Answering paragraph 38 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

39. Answering paragraph 39 of the Amended Complaint, the Insureds admit that the Wayfarer Action FAC was filed on January 31, 2025. The Insureds deny the remaining allegations in paragraph 39 of the Amended Complaint. The Wayfarer Action FAC speaks for itself.

40. Answering paragraph 40 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The Wayfarer Action FAC speaks for itself.

*D. The Wayfarer Defendants' Tender to Harco Under the 2024 Policy*

41. Answering paragraph 41 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

42. Answering paragraph 42 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

43. Answering paragraph 43 of the Amended Complaint, the Insureds admit that Harco issued a letter dated June 20, 2025. The Insureds deny the remaining allegations in paragraph 43 of the Amended Complaint. The June 20, 2025 letter speaks for itself.

44. Answering paragraph 44 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The June 20, 2025 letter speaks for itself.

45. Answering paragraph 45 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

46. Answering paragraph 46 of the Amended Complaint, the Insureds admit that Harco issued a letter dated June 26, 2025. The Insureds deny the remaining allegations in paragraph 46 of the Amended Complaint. The June 26, 2025 letter speaks for itself.

47. Answering paragraph 47 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

48. Answering paragraph 48 of the Amended Complaint, the Insureds admit that Wayfarer's counsel issued a letter dated July 22, 2025. The Insureds deny the remaining allegations in paragraph 48 of the Amended Complaint. The July 22, 2025 letter speaks for itself.

49. Answering paragraph 49 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

50. Answering paragraph 50 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

51. Answering paragraph 51 of the Amended Complaint, the Insureds admit that Harco issued a letter dated August 25, 2025. The Insureds deny the remaining allegations in paragraph 51 of the Amended Complaint. The August 25, 2025 letter speaks for itself.

52. Answering paragraph 52 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

53. Answering paragraph 53 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The Insureds' counsel responded to Harco's April 15, 2026 letter on August 17, 2026.

54. Answering paragraph 54 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

*E. The Harco Insurance Policies*

55. Answering paragraph 55 of the Amended Complaint, the Insureds admit that Harco issued the 2023 Policy and the 2024 Policy. The Insureds deny the remaining allegations in

paragraph 55 of the Amended Complaint. The 2023 Policy and the 2024 Policy (the "Policies") speak for themselves.

56. Answering paragraph 56 of the Amended Complaint, the Insureds admit that the Policies contain the coverage parts listed in this paragraph. The Insureds deny the remaining allegations in paragraph 56 of the Amended Complaint. The Policies speak for themselves.

57. Answering paragraph 57 of the Amended Complaint, the Insureds admit that the Policies contain a coverage part entitled "D&O Coverage Part." The Insureds deny the remaining allegations in paragraph 57 of the Amended Complaint. The Policies speak for themselves.

58. Answering paragraph 58 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 58 of the Amended Complaint. The Policies speak for themselves.

59. Answering paragraph 59 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 59 of the Amended Complaint. The Policies speak for themselves.

60. Answering paragraph 60 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 60 of the Amended Complaint. The Policies speak for themselves.

61. Answering paragraph 61 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the

remaining allegations in paragraph 61 of the Amended Complaint. The Policies speak for themselves.

62. Answering paragraph 62 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 62 of the Amended Complaint. The Policies speak for themselves.

63. Answering paragraph 63 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 63 of the Amended Complaint. The Policies speak for themselves.

64. Answering paragraph 64 of the Amended Complaint, the Insureds admit the existence of the policy terms referred to in this paragraph. The Insureds deny the remaining allegations in paragraph 64 of the Amended Complaint. The Policies speak for themselves.

65. Answering paragraph 65 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 65 of the Amended Complaint. The Policies speak for themselves.

66. Answering paragraph 66 of the Amended Complaint, the Insureds admit the existence of the policy terms referred to in this paragraph. The Insureds deny the remaining allegations in paragraph 66 of the Amended Complaint. The Policies speak for themselves.

67. Answering paragraph 67 of the Amended Complaint, the Insureds admit the existence of the policy terms referred to in this paragraph. The Insureds deny the remaining allegations in paragraph 67 of the Amended Complaint. The Policies speak for themselves.

68. Answering paragraph 68 of the Amended Complaint, the Insureds admit the existence of the excerpted portion of the Policies quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 68 of the Amended Complaint. The Policies speak for themselves.

69. Answering paragraph 69 of the Amended Complaint, the Insureds admit the existence of the policy terms referred to in this paragraph. The Insureds deny the remaining allegations in paragraph 69 of the Amended Complaint. The Policies speak for themselves.

70. Answering paragraph 70 of the Amended Complaint, the Insureds admit that the 2024 Policy was a renewal of the 2023 Policy and the existence of the excerpted portions of the Warranty Letter and Renewal Application quoted in this paragraph. The Insureds deny the remaining allegations in paragraph 70 of the Amended Complaint. The Policies, Warranty Letter, and Renewal Application speak for themselves.

71. Answering paragraph 71 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The Policies speak for themselves.

## FIRST CAUSE OF ACTION
## (Declaratory Judgment – No Coverage Under the 2024 Policy's Liability Insuring Agreements)

72. The Insureds repeat and incorporate each of their responses to the allegations contained in paragraphs 1 through 71 above as if fully set forth herein.

73. Answering paragraph 73 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

74. Answering paragraph 74 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

75. Answering paragraph 75 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

76. Answering paragraph 76 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

77. Answering paragraph 77 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

78. Answering paragraph 78 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The pleadings filed in the *Lively* lawsuit speak for themselves.

79. Answering paragraph 79 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The Policies speak for themselves.

80. Answering paragraph 80 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment – No Coverage Under the 2023 Policy's Liability Insuring Agreements)**

81. The Insureds repeat and incorporate each of their responses to the allegations contained in paragraphs 1 through 80 above as if fully set forth herein.

82. Answering paragraph 82 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

83. Answering paragraph 83 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The 2023 Policy speaks for itself.

84. Answering paragraph 84 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment – No Coverage Under the 2023 Policy Pursuant to the 2023 Warranty and 2023 Prior Knowledge Exclusions)**

85. The Insureds repeat and incorporate each of their responses to the allegations contained in paragraphs 1 through 84 above as if fully set forth herein.

86. Answering paragraph 86 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

87. Answering paragraph 87 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

88. Answering paragraph 88 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

89. Answering paragraph 89 of the Amended Complaint, the Insureds deny the allegations in this paragraph. The 2023 Warranty speaks for itself.

90. Answering paragraph 90 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

91. Answering paragraph 91 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

**FOURTH CAUSE OF ACTION**
**(Declaratory Judgment – No Coverage Under the 2024 Policy Pursuant to the 2024 Renewal Application and 2024 Prior Knowledge Exclusions)**

92. The Insureds repeat and incorporate each of their responses to the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

93. Answering paragraph 93 of the Amended Complaint, the Insureds admit the allegations in this paragraph.

94. Answering paragraph 94 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

95. Answering paragraph 95 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

96. Answering paragraph 96 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

97. Answering paragraph 97 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

98. Answering paragraph 98 of the Amended Complaint, the Insureds deny the allegations in this paragraph.

## DENIAL OF HARCO'S RELIEF REQUESTED

The Insureds deny any factual and/or legal assertions contained in Harco's prayer for relief and deny that Harco is entitled to any relief in this case.

## AFFIRMATIVE DEFENSES

Subject to and without waiving the Insureds' denial of Harco's allegations and without any admissions as to the burden of proof, the Insureds assert the following defenses. The Insureds expressly reserve the right to amend their Answer and/or raise additional defenses as new or different information becomes available through further investigation and discovery.

## FIRST AFFIRMATIVE DEFENSE

Harco fails to state any claims upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Harco's claims are not ripe and not justiciable insofar as they are contingent on the entry of final judgment in, or other final resolution of, the *Lively* lawsuit.

## THIRD AFFIRMATIVE DEFENSE

Harco's claims are barred by the doctrines of waiver and/or estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Harco's claims are barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Harco's claims are barred, in whole or in part, because Harco has breached its duties under the Policies.

## SIXTH AFFIRMATIVE DEFENSE

Harco is barred from any recovery against the Insureds by reason of its tortious breaches of the implied covenant of good faith and fair dealing and its bad-faith unreasonable conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, the Insureds respectfully request that the Court enter judgment:

a. dismissing the Amended Complaint in its entirety, with prejudice;

b. awarding the Insureds their reasonable attorneys' fees and costs incurred in defending this action pursuant to *Mighty Midgets, Inc. v. Centennial Insurance Co.*, 47 N.Y.2d 12, 21–22 (1979), and *U.S. Underwriters Insurance Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597–98 (2004); and

c. granting the Insureds such other, further, and different relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, the Insureds hereby demand a trial by jury on all claims and issues so triable.

## COUNTERCLAIMS

Counterclaim Plaintiffs Wayfarer Studios LLC ("Wayfarer"), It Ends With Us Movie LLC ("IEWUM"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), and Steve Sarowitz ("Sarowitz") (collectively, the "Insureds"), by and through their undersigned counsel, file these counterclaims against Plaintiff-Counterclaim Defendant Harco National Insurance Company ("Harco") and allege as follows:

## NATURE OF THE COUNTERCLAIMS

1. Harco sold the Insureds insurance policies promising to defend and indemnify them against, among other things, lawsuits alleging defamation.

2. When the Insureds were sued by Blake Lively in a lawsuit alleging defamation, invasion of privacy, and various other claims, they timely notified Harco and requested that Harco defend them and otherwise honor its duties under the Harco insurance policies.

3. However, instead of immediately assuming its Insureds' defense, Harco waited for weeks or longer and then denied coverage, refusing to honor any of its duties. In so acting, Harco breached its duties, including its duties to promptly and thoroughly investigate Ms. Lively's claims against the Insureds, to immediately assume the Insureds' defense, and to honor its implied covenant of good faith and fair dealing. Therefore, Harco is liable for breach of contract and tortious bad faith, and is liable to the Insureds for compensatory and consequential damages.

## PARTIES

4. Wayfarer is a Delaware limited liability company with its principal place of business in Los Angeles, California.

5. IEWUM is a California limited liability company with its principal place of business in Los Angeles, California. IEWUM is wholly owned by Wayfarer.

6. Justin Baldoni is a California resident. He acted in and directed the movie *It Ends With Us*. He is also a Co-Founder, Co-Chairman, and member of Wayfarer.

7. Jamey Heath is a California resident. He is the CEO and a member of Wayfarer and provided producing services for *It Ends With Us*.

8. Steve Sarowitz is a citizen of Illinois. He is a Co-Founder and Co-Chairman of Wayfarer.

9. The Insureds are informed and believe, and on that basis allege, that Harco is a stock company incorporated in North Carolina with its principal place of business in Raleigh, North Carolina.

10. Harco is part of the IAT Insurance Group of insurance companies. On its website, IAT Insurance Group makes statements and representations on behalf of its member companies, including Harco, such as that Harco is "committed to making your claims experience as smooth as possible."

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1367 because each claim is so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is proper because this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff, Harco, on the one hand, and the defendants, the Insureds, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## FACTUAL BACKGROUND

**A. The *Lively* Lawsuit**

13. On December 31, 2024, Blake Lively filed the *Lively* lawsuit against the Insureds and others. A true and correct copy of the *Lively* Complaint (without exhibits) is attached hereto as Exhibit 1 and incorporated by reference.

14. On February 18, 2025, Ms. Lively filed an Amended Complaint in the *Lively* lawsuit (the "*Lively* Amended Complaint"). A true and correct copy of the *Lively* Amended Complaint (without exhibits) is attached hereto as Exhibit 2 and incorporated by reference.

15. The *Lively* Amended Complaint includes causes of action for retaliation, false light invasion of privacy, and defamation. It includes the following allegations:

a. The Insureds perpetuated an ongoing "social manipulation" campaign designed to retaliate against Ms. Lively by destroying her reputation;

b. The Insureds launched a "coordinated campaign to cast Ms. Lively in a false light during the publicity and promotion of the Film;"

c. The Insureds compiled a Scenario Planning Document, which, among other things referred to Mr. Baldoni's Man Enough Podcast as one of the "Key Messaging Points" of the planning and strategy;

d. The Scenario Planning Document was a strategy to "advance misleading counternarratives;"

e. The Insureds "publicly disclosed information and material regarding Ms. Lively's marketing decisions, moral character, private life and family, which showed Ms. Lively in a false light;"

f. The Insureds "intentionally made false statements of fact and false statements that conveyed a false meaning about Ms. Lively;"

g. The Insureds made statements that "are reasonably understood to state and imply that Ms. Lively fabricated claims of harassment and filed false claims of harassment with the Civil Rights Department of the State of California and with the Court;"

h. The Insureds made statements "suggesting that [Ms. Lively] fabricated serious claims of workplace sexual harassment on behalf of herself and others for no reason other than to take creative control of the Film, threatened individuals associated with her work, and acted as a bully who leveraged her position as an actress;" and

i. The Insureds published these false statements despite knowing that Ms. Lively had reported the same claims during filming that have been raised in the Complaint, and despite being aware that there were multiple other complaints raised by individuals other than Ms. Lively during the shooting of the Film.

Ex. 2, *Lively* Am. Compl. ¶¶ 26, 372, 390, 398, 435, 448, 463, 466, 467 & Ex. D therein (Scenario Planning – It Ends With Us).

16. On July 30, 2025, Ms. Lively filed a Second Amended Complaint for "Sexual Harassment, Retaliation, Breach of Contract, False Light, Defamation, and Other Claims." A true and correct copy of the *Lively* Second Amended Complaint (without exhibits) is attached hereto as Exhibit 3 and incorporated by reference.

17. On April 2, 2026, the *Lively* court granted in part and denied in part the Insureds' motions for judgment on the pleadings and for summary judgment, holding:

> Judgment is granted in the Wayfarer Parties' favor with respect to all counts in the Second Amended Complaint except for: (1) Lively's fourth cause of action for retaliation in violation of FEHA against IEWUM and Wayfarer; (2) Lively's seventh cause of action against TAG for aiding and abetting retaliation in violation

> of FEHA; and (3) Lively's ninth cause of action for breach of the CRA against IEWUM.

A true and correct copy of the April 2, 2026, Order (the "April 2 Order") is attached hereto as Exhibit 4 and incorporated by reference.

18. The April 2 Order stated:

> Analyzing the factors and the relationship as a whole, the relevant considerations overwhelmingly point in the direction of Lively being properly classified an independent contractor. Lively is a highly skilled artist who agreed to contribute her acting skills and name recognition to a single-purpose entity for a single term-limited project for equity in the project with heavily negotiated approval rights over her own performance and key aspects of the project, and with the ability to accept and perform other work outside of a short six-week window (during which her presence on set was necessary for purposes of creative collaboration). Not only did she reserve substantial contractual control over her participation in the Film, but she exercised that control.

Ex. 4, April 2 Order at 74.

19. On May 4, 2026, the Insureds and Ms. Lively reached a settlement out of court.

**B. The Harco Policies**

20. Harco issued two Management Liability Policies to Wayfarer as the Named Insured: (1) Policy No. PML0002157 00, effective for the period of July 15, 2023, to July 15, 2024; and (2) Policy No. PML0002157 01, effective for the period of July 15, 2024, to July 15, 2025 (the "Policies"). *See generally* Ex. A to Harco Am. Compl., 2024 Policy.

21. The Insuring Agreement in the D&O Coverage Part of the Policies states, in relevant part, that Harco shall pay on behalf of the Insured Entity, "Loss which the Insured Persons become legally obligated to pay by reason of a Claim first made against the Insured Persons during the Policy Period, or, if applicable, the Extended Reporting Period for a Wrongful Act, but only to the extent that such loss is not indemnified by an Insured Entity." *Id.,* D&O Coverage Part, Insuring Agreements, § I(A).

22. Insuring Agreement A.1. in the Employment Practices and Third Party Liability Coverage Part ("EPL Coverage Part") states, in relevant part, that Harco shall pay on behalf of the Insureds, "Loss which the Insured become legally obligated to pay by reason of an Employment Claim first made against the Insureds during the Policy Period or, if applicable, the Extended Reporting Period for any Employment Practices Wrongful Act." *Id.,* EPL Coverage Part, Insuring Agreements, § I(A)(1).

23. Insuring Agreement A.2. in the EPL Coverage Part states, in relevant part, that Harco shall pay on behalf of the Insureds, "Defense Costs which the Insureds become legally obligated to pay by reason of an Employment Claim first made against the Insureds during the Policy Period or, if applicable, the Extended Reporting Period for any Employment Contract Breach." *Id.*, EPL Coverage Part, Insuring Agreements, § I(A)(2).

24. Insuring Agreement B in the EPL Coverage Part states, in relevant part, that Harco shall pay on behalf of the Insured Entity, "Loss which the Insureds become legally obligated to pay by reason of a Third Party Claim first made against the Insureds during the Policy Period or, if applicable, the Extended Reporting Period for any Third Party Wrongful Act." *Id.,* EPL Coverage, Insuring Agreements, § I(B).

25. The Policies state that Harco "shall have the right and duty to defend any Claim against the Insureds which is covered by the Liability Coverage Parts, even if the allegations in the Claim are groundless, false or fraudulent. The Insurer's duty to defend any Claim shall cease upon exhaustion of the applicable Limit of Liability." *Id.,* General Terms and Conditions, § VIII, as amended, "Defense, Cooperation and Consent Amended Endorsement."

26. "Insured" is defined in the D&O Coverage Part as "any Insured Person or any Insured Entity." *Id.,* D&O Coverage Part, Definitions, § III.

27. "Insured Person" is defined in the D&O Coverage Part as "any Employee or Executive." *Id.,* D&O Coverage Part, Definitions, § III.

28. "Insured" is defined in the EPL Coverage Part as "the Insured Entity and the Insured Persons." *Id.,* EPL Coverage Part, Definitions, § III.

29. "Insured Persons" is defined in the EPL Coverage Part as an

> (1) Executive and any natural persons who were, now are or shall become a director of human resources or the functional equivalent thereof of the Insured Entity; (2) Employee who is not described in subparagraph 1. above; and (3) Independent Contractor, but only if the Insured Entity has agreed, prior to the date of the alleged Wrongful Act by such Independent Contractor, to provide indemnification to such individual to the same extent as that provided to the Insured Entity's employees.

*Id.,* EPL Coverage Part, Definitions, §III.

30. "Employee" under the General Terms and Conditions is defined as

> any natural persons who have served, now serve or shall serve in any of the following: (1) any natural persons in the regular service of an Insured Entity in the ordinary course of the Insured Entity's business and whom the Insured Entity compensates by salary, wage and/or commissions and has the right to govern and direct in the performance of such service, including any such natural persons who are leased, temporary, part-time or seasonal employees of the Insured Entity; positions, other than an Executive; (2) any natural person independent contractors who are treated under applicable law as employees of the Insured Entity; and (3) any volunteers of the Insured Entity.

*Id.,* General Terms and Conditions, Definitions, § III.

31. "Executive" is defined as

> any natural person: (1) past, present or future duly elected or appointed director (including a shadow or de facto director), trustee (excluding a bankruptcy or litigation trustee), advisory board member, officer, governor or Manager of an Insured Entity; (2) past, present or future In-House General Counsel or Risk Manager of the Named Insured; (3) holder of a functionally equivalent position to those included in paragraph 1. or 2. above; or (4) holder of a functionally equivalent position to those included in paragraph 1., 2. or 3. above while serving in an Outside Position.

*Id.*

32. Wayfarer is a Delaware limited liability company.

33. Wayfarer is the sole Member of IEWUM.

34. Jamey Heath is the CEO of Wayfarer and a Member of Wayfarer.

35. Justin Baldoni is a Co-Founder, Co-Chairman, and Member of Wayfarer.

36. Steve Sarowitz is a Co-Founder and Co-Chairman of Wayfarer.

37. "Loss" under the D&O Coverage Part is defined as

> the amount the Insureds become legally obligated to pay by reason of a Claim for which coverage under this Coverage Part applies, including but not limited to Defense Costs, compensatory, punitive, exemplary or multiple damages, judgments, an award of pre-judgment and post-judgment interest with respect to covered damages, settlements, claimants' attorneys' fees and costs for which an Insured against whom the Claim is made is legally obligated to pay, civil fines or civil penalties assessed against an Insured Person for an unintentional or non-willful violation of law (including without limitation pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 16 U.S.C. §78dd-2(g)(2)(B)), Crisis Event Expenses, Demand Response Costs and any tax imposed on an Insured Entity for which an Insured Person is liable by reason of the Insured Entity's Financial Insolvency.

*Id.,* D&O Coverage Part, Definitions, § III.

38. "Loss" under the EPL Coverage Part is defined as

> the amount the Insureds become legally obligated to pay by reason of a Claim made against them for which coverage under this Coverage Part applies, including but not limited to compensatory, punitive, exemplary or multiple damages, judgments, an award of pre-judgment and postjudgment interest with respect to covered damages, settlements, Defense Costs, claimant's attorney's fees and costs for which an Insured against whom the Claim is made is legally obligated to pay by reason of a court order or settlement agreement to which the Insurer consents pursuant to Section VIII. of the General Terms and Conditions, civil fines or civil penalties assessed against an Insured Person for an unintentional or non-willful violation of any federal, state, local or foreign law, back pay or front pay, liquidated damages awarded in accordance with the Age Discrimination in Employment Act, Family and Medical Leave Act, or Equal Pay Act, and Diversity Sensitivity Training Costs.

*Id.*, EPL Coverage Part, Definitions, § III.

39. "Claim" is defined to include "a written demand against an Insured for monetary damages or non-monetary or injunctive relief, commenced by the Insured's receipt of such demand." *Id.*, D&O Coverage Part, Definitions, § III.

40. "Employment Claim" is defined to include

> any of the following which are brought and maintained against an Insured by or on behalf of any past, present, prospective or alleged Employee or Executive or applicant for employment by an Entity, including if applicable any appeal therefrom: (1) a written demand against an Insured for monetary damages or non-monetary or injunctive relief, commenced by the Insured's receipt of such demand, including a written demand for reinstatement, reemployment or reengagement; (2) a civil proceeding against an Insured, commenced by the service of a complaint or similar pleading upon the Insured.

*Id.,* EPL Coverage Part, Definitions, § III.

41. "Third Party Claim" is defined to include

> any of the following which are brought and maintained against an Insured by or on behalf of a Third Party, including if applicable any appeal therefrom: (1) a written demand against an Insured for monetary damages or non-monetary or injunctive relief, commenced by the Insured's receipt of such demand; [and] (2) a civil proceeding against an Insured, commenced by the service of a complaint or similar pleading upon the Insured.

*Id.*

42. "Wrongful Act" is defined in the Policies as "any . . . error, misstatement, misleading statement, neglect, breach of duty, omission or act committed, attempted or allegedly committed or attempted by (a) an Insured Person in his or her capacity as such; or (b) an Insured Entity." *Id.,* D&O Coverage Part, Definitions, § III.

43. "Employment Practices Wrongful Act" is defined as "any of the following actually or allegedly committed by the Insured Entity or by Insured Persons in their capacity as such: (1) Employment Discrimination; (2) Harassment; (3) Retaliation; (4) Workplace Tort; (5) Wrongful Employment Decision; or (6) Wrongful Termination." *Id.,* EPL Coverage Part, Definitions, § III.

44. "Third Party Wrongful Act" is defined as "any Harassment directed against a Third Party committed, attempted or allegedly committed or attempted by the Insured Entity or by any Insured Person while acting in his or her capacity as such." *Id.*

45. To the extent not waived or otherwise excused, the Insureds have complied with all terms and conditions contained in the Policies. Therefore, the Insureds are entitled to all benefits of the Policies.

**C. Harco's Breaches and Bad-Faith Conduct**

46. On April 25, 2025, the Insureds formally notified Harco of the *Lively* lawsuit, requesting that Harco honor its duties under the Policies.

47. The *Lively* lawsuit was widely publicized upon its filing. Ms. Lively's complaints immediately appeared in the *New York Times* and quickly spread to all major publications and social media outlets worldwide. Media coverage was, and remains, intense, and has garnered nearly daily press coverage since inception.

48. The Insureds are informed and believe, and on that basis allege, that Harco had, or should have had, actual or constructive notice of the *Lively* lawsuit and its allegations against the Insureds on or shortly after its filing. Despite that constructive notice, Harco did not contact the Insureds, request information from the Insureds, or offer to defend the Insureds or otherwise assume any duties that it might owe the Insureds under the Policies. Instead, Harco left the Insureds on their own to defend against the *Lively* lawsuit, incurring substantial amounts of defense costs and attorneys' fees without Harco's support.

49. On June 20, 2025, Harco issued a letter denying coverage for the *Lively* lawsuit, incorrectly claiming the Insureds failed to meet two conditions of the Policies. Harco also summarily raised a variety of other coverage defenses, but failed to cite any facts supporting those

defenses or provide any detail for why it believed the defenses may apply. Harco's failure to provide such facts and detailed explanation falls short of its duties to clearly and thoroughly state the bases for any such defenses. *See* 10 Cal. Code Regs. § 2695.7(b)(1); 11 NYCRR §§ 216.3(b), 216.6 (c)-(d).

50. On June 26, 2025, Harco issued another letter reiterating its disclaimer of coverage of the *Lively* lawsuit and amending its prior letter to now assert several inapplicable exclusions.

51. On July 21, 2025, despite a pending response from the Insureds' counsel, Harco filed the instant action seeking a declaration that its Policies do not provide coverage for the *Lively* lawsuit.

52. On July 22, 2025, the Insureds' counsel responded by letter, explaining why Harco's denial was wrong and demanding Harco immediately provide a defense to the Insureds.

53. On April 15, 2026, Harco sent another letter further denying coverage based on the April 2 Order.

54. On August 17, 2026, after a ruling on a motion in this action, the Insureds' counsel responded to Harco's April 15, 2026 letter, once again explaining why Harco's denial of coverage was wrong and demanding an immediate defense.

55. By refusing to provide the defense to which the Insureds were entitled in the *Lively* lawsuit, Harco has wrongfully repudiated and refused to perform its duties to its Insureds.

56. In so acting, Harco has deprived the Insureds from receiving the full benefits that they were promised and to which they are entitled under the Policies.

## FIRST COUNT – BREACH OF CONTRACT

57. The Insureds incorporate and reallege paragraphs 1 through 56 of these Counterclaims as if fully stated herein.

58. The Insureds paid Harco valuable premiums to purchase the Policies, pursuant to which Harco promised to provide D&O and EPL coverage during the policy periods in accordance with the terms and conditions of the Policies.

59. The Policies are valid and enforceable contracts.

60. The Insureds have fully performed their contractual obligations to Harco under the Policies.

61. By acting as alleged above and by failing and refusing to defend the Insureds, or, to the extent of any applicable limits of insurance in the Policies, pay their attorneys' fees and costs incurred in the defense of the *Lively* lawsuit, Harco has breached its duty under the Policies.

62. As a direct and proximate result of Harco's breaches, the Insureds have sustained, and continue to sustain, damages in excess of $1,000,000 in an amount to be proven at trial, plus interest.

**SECOND COUNT – BAD FAITH**

63. The Insureds incorporate and reallege paragraphs 1 through 62 of these Counterclaims as if fully stated herein.

64. The Policies are each an insurance contract which, like all contracts, contains an implied covenant of good faith and fair dealing in the course of performance. This covenant imposes a duty on the part of Harco to act in good faith and deal fairly with the Insureds, not to interfere with the rights of the Insureds to receive benefits due under the Policies, and to give at least the same level of consideration to the Insureds' interests as it gave its own interests.

65. Harco also has a duty under its policies, the law, and insurance industry custom, practice, and standard to honor the terms of insurance promised under the Policies.

66. Instead of complying with these duties, Harco acted in bad faith by, among other things:

a. failing to promptly conduct a full and thorough investigation of the bases that would support the Insureds' entitlement to coverage;

b. unreasonably failing and refusing to honor its promises and representations in the Policies;

c. unreasonably refusing to pay the full amount due under the Policies;

d. putting its interests above those of the Insureds; and

e. otherwise acting as alleged above.

67. In breach of the implied covenant of good faith and fair dealing, Harco did these things and committed the acts alleged above for the purpose of consciously withholding from the Insureds the rights and benefits which they were, and are, entitled to under the Policies.

68. Harco's acts are inconsistent with the reasonable expectations of the Insureds, are contrary to the express and implied terms of the Policies, and constitute bad faith.

69. As a direct and proximate result of Harco's breach of the implied covenant of good faith and fair dealing, the Insureds have sustained, and continue to sustain, damages in an amount to be proven at trial.

70. The Insureds are also entitled to recover all attorneys' fees that they reasonably incurred, and continue to incur, in their efforts to obtain the benefits due under the Policies that Harco wrongfully withheld, and is withholding, in bad faith.

71. The Insureds are further entitled to interest thereon at the maximum legal rate.

72. The Insureds continue to suffer damages because of Harco's bad faith.

73. The Insureds are informed and believe, and on that basis allege, that Harco—acting through one or more of its officers, directors, or other corporate employees with substantial independent discretionary authority over significant aspects of Harco's business—performed, authorized, and/or ratified the bad faith conduct alleged above.

**THIRD COUNT – DECLARATORY JUDGMENT**

74. The Insureds incorporate and reallege paragraphs 1 through 73 of these Counterclaims as if fully stated herein.

75. Pursuant to the terms of the Policies, Harco had a duty to defend the Insureds in the *Lively* lawsuit and to pay all reasonable fees and costs that the Insureds incurred in their defense.

76. Harco disputes and denies that it had any duty to defend any of the Insureds in the *Lively* lawsuit.

77. The Insureds were deprived of the benefit of Harco's promise and duty to defend, one of the most important benefits that Harco was obligated to provide.

78. The Insureds seek a judicial declaration by this Court in accord with their contentions, rejecting Harco's contentions and declaring that Harco has a duty to defend the Insureds in the *Lively* lawsuit.

79. A declaration is necessary at this time in order that the parties' dispute may be resolved and that they may be aware of their prospective rights and duties.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Insureds respectfully request that this Court grant:

a. On the First Count, damages according to proof at the time of trial, plus interest;

b. On the Second Count, damages according to proof at the time of trial, including reasonable attorneys' fees incurred in obtaining the benefits due under the Policies, plus interest;

c. On the Third Count, declaratory judgment in favor of the Insureds and against Harco, in accord with the Insureds' contentions above, and that Harco had a duty to defend and owes the Insureds the attorneys' fees, costs, and other amounts they incurred in their defense of the *Lively* lawsuit;

d. On all three Counts, costs of suit herein; and

e. Such other, further, and different relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, the Insureds hereby demand a trial by jury on all claims and issues so triable.

Dated: New York, New York
September 2, 2026

**MCGUIREWOODS LLP**

By: *s/ Aleksandra Kaplun*
Aleksandra Kaplun
Eliza J. Logan
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
(212) 548-2100
*akaplun@mcguirewoods.com*
*elogan@mcguirewoods.com*

Kirk Pasich (*Pro Hac Vice* forthcoming)
1800 Century Park East, 8th Floor
Los Angeles, California 90067
(310) 315-8200
*kpasich@mcguirewoods.com*

*Counsel for Defendants-Counterclaim Plaintiffs Wayfarer Studios LLC, It Ends With Us Movie LLC, Justin Baldoni, Jamey Heath, and Steve Sarowitz*